THREE CASES ENTITLED: STATE OF FLORIDA v. FLORIDA STATE IMPROVEMENT COMMISSION, an Agency of The State of Florida.

31 So. (2nd) 548          June Term, 1947

July 22, 1947          Special Division B

*A. K. Black,* for appellant.

*B. A. Meginnis* and *G. Warren Sanchez,* for appellee.

BUFORD, J.:

Three appeals bring for review final decrees of validation as will be hereinafter referred to. The three cases are consolidated for the purpose of consideration.

The certificates are issued by Florida State Improvement Commission for the purpose of producing funds for the con-

struction of toll roads and bridges. One set of certificates applies to Highlands County, one set to Suwannee County and one set to Broward County. Neither set of certificates is dependent upon, or has any dependent relation to the others.

The appellant states the history of the cases thus:

"In the appeal in the Suwannee County case the decree validates an issue of $450,000 of certificates to construct a certain toll road in said county, in the Broward County case an issue of $250,000 for the construction of a toll bridge at Fort Lauderdale and in the Highlands County case an issue of $525,000 for the construction of a toll road in said County.

"The Florida State Improvement Commission which is an Agency of the State of Florida created and existing under Chapter 420, Florida Statutes, 1941, as amended by Chapter 22821, Laws of Florida, 1945, has issued the said revenue certificates for the purpose of financing the cost of constructing the roads and bridge. The certificates are payable in the case of Highlands County over a period of seven (7) years in annual instalments of $50,000, $60,000, $70,000, $75,000, $80,000, $90,000 and $100,000 respectively, together with interest payable semi-annually, in the case of Broward County, over a period of seven (7) years in annual installments of $25,000, $25,000, $30,000, $40,000, $50,000 and $50,000 respectively, together with interest payable semi-annually and in the case of Suwannee County the certificates are payable over a period of eleven (11) years in annual installments of $15,000, $20,000, $25,000, $30,000, $35,000, $40,000, $45,000, $50,000, $55,000, $65,000 and $75,000 respectively, together with interest payable semi-annually. It is proposed by the authorizing resolution in each case that the indebtedness evidenced by said revenue certificates be paid from the income and rental either as tolls or under a lease with the State Road Department, and adequate provision has been made for the handling of the funds whereby the cost of construction and the meeting of all annual debt service requirements may be met.

"In order to insure an adequate source of income in the nature of rent for meeting all debt service requirements on the certificates issued the Florida State Improvement Com-

mission has entered into a lease-purchase agreement with the State Road Department designed to meet all such debt service requirements when due and to surrender the said road and bridge to the State when all obligations shall have been paid. In every case, however, the facilities are to be constructed as toll roads and bridges and under the terms of the authorizing resolution the Florida State Improvement Commission can collect tolls if and when it becomes necessary.

"The authorizing resolution and the revenue certificates themselves in each instance provide that said certificates are not bonds or a debt of the State of Florida and shall not be enforceable against the State, nor shall payment thereof be enforceable out of any funds of the Florida State Improvement Commission other than the income and revenue pledged to the holder or holders of the certificates, and that no holder or owner of any of the certificates so issued shall ever have the right to compel any exercise of the taxing power of the State of Florida to pay the certificates or the interest thereon, nor to enforce payment thereof against any property of the State of Florida or the Florida State Improvement Commission, nor shall the certificates constitute a charge, lien or encumbrance, legal or equitable, upon any property of the Florida State Improvement Commission or the State of Florida other than the net revenues and income derived from the said roads and bridge,

"The rent to be paid by the lessee, State Road Department, will come from the 80% surplus gasoline tax fund collected by the State Road Department to be expended in the respective counties. The Florida State Road Department by authority of Chapter 20555, Laws of Florida, Acts 1941 (Section 341.63, Florida Statutes 1941) and Section 16(c) Article IX of the State Constitution is Authorized to lease and/or purchase toll roads and bridges. The Florida State Improvement Commission and the State Road Department having determined that the construction and lease-purchase of said toll roads and bridges as provided in said resolution are highly advisable and for the best interest of the State of Florida and the respective counties, filed its petitions, respectively, in the Circuit Court of the Third Judicial Circiut in and for Suwannee

County and the Tenth Judicial Circuit in and for Broward County and the Fifteenth Judicial Circuit in and for Highlands County. Rule Nisi duly issued and published. Answer on behalf of the State of Florida was filed by the State Attorney for the respective Judicial Circuits and thereafter at hearings duly held before the Judges of such Circuits final decrees were entered validating the said certificates. These appeals are from said final decree.

"The 1947 session of the legislature enacted Chapter 23758 —(No. 144) Senate Bill No. 5, "An Act authorizing the Florida State Improvement Commission to acquire by purchase, gift or eminent domain, and to construct roads or bridges within the State of Florida; to finance the same through the issuance and sale of revenue certificates, debentures or bonds; and to lease, sell and convey the said roads or bridges to the State Road Department of Florida and providing that such lease, rental or purchase price may be paid from the surplus gasoline taxes accruing to the credit and account of the county or counties in which such roads or bridges may be located under the provisions of Section 16 of Article 9 of the Constitution of Florida, or from other state road funds," which authorizes the State Improvement Commission and the State Road Department to negotiate and conclude transactions similar to those covered by these cases, the word "toll" however, having been eliminated from the enabling Act.

"The statutes authorizing the issuance of these revenue certificates, and the execution of the lease-agreement between the State Road Department and Florida State Improvement Commission are: Section 341.63, Florida Statutes 1941, and Section 420 Florida Statutes 1941, as amended by Chapter 22821, Laws of Florida, Acts of 1945, and the applicable provisions are as follows:

"341.63 State Road Department may contract with public project owners, etc.

"(1) The state road department of the State of Florida is hereby authorized to enter into agreements with any municipal corporation, county, district, authority or any political subdivision, or any agency or commission of the State of Florida, (each of which is hereafter in this law referred to as the

public project owner) which has heretofore acquired or constructed any toll revenue producing bridge, causeway, tunnel, ferry, toll road or any combination thereof (hereafter in this law referred to as the 'project') or which has adopted, or may hereafter adopt, proceedings pursuant to which such public project owner is to acquire or construct any toll revenue-producing bridge, causeway, tunnel, ferry, road, toll road or any combination thereof (hereinafter in this law referred to as the 'project,' for the purpose of doing or agreeing to do any one or more of the following:

"(a) Leasing from any public project owner any project or part thereof for such period of years and under such terms and provisions, including provisions for the operation and maintenance thereof either by the public project owner or by the department, as may be considered desirable and be specified in the lease or leases.

"(b) Purchasing from any public project owner any project or part thereof under such terms and provisions, including provisions for the operation and maintenance thereof either by the public project owner or by the department, as may be specified in the purchase contract or contracts.

"(c) Paying the cost or any part of the cost of the operation and maintenance of any project for such period as may be fixed in such agreement. The payment of such costs may be made a charge upon the general revenues of the department or may be made a charge solely on certain specified revenues, including revenues derived from the State gasoline tax, or may be made a charge partly upon such general gasoline tax revenues, and a charge partly upon such certain specified revenues.

"(d) Entering into such agreements with the United States of America and any of its branches or agencies and doing such things as may be necessary to secure federal aid, moneys and assistance in the acquisition, construction, improvement, repair, maintenance and operation of any project or part thereof.

"(e) Constructing, improving, repairing, maintaining or operating project or part of project.

"(f) Making to the public project owner any grants of funds, materials, property, easements, or rights of way for use in the acquisition, construction, improvement, repair, maintenance or operation of any project or part thereof.

"(g) Operating or maintaining any project or part thereof as a state road or part thereof, and this in spite of the fact that title to such project or part thereof remains in the public project owner. The provisions of any existing law requiring title to the state roads to be vested in the State of Florida shall not be operative as to projects or parts of projects made state roads or maintained or operated as state roads under the provisions of this law.

"(h) Making available to any public project owner for paying the cost or part of the cost of constructing, repairing, improving, maintaining or operating any project, any federal aid funds or any other funds under the control of the department which may properly be used for such purposes.

"(2) Any such public project owner is hereby authorized to enter into an agreement or agreements with the State Road Department for the purpose of accomplishing any one or more of the purposes set out in Sub-Section (1) and any such public project owner may use any funds available to it by authority of law for use on any such project to accomplish any such purpose covered by any such agreement or agreements, and the state road department is hereby authorized to use federal aid or any state funds appropriated or allocated to it for state road purposes to carry out said agreements with public project owners. Any public project owner which is a county may use any county road and bridge fund from whatever source derived for accomplishing any of said purposes for any such project which is a county purpose.

"(3) The state road department may make any project, or part thereof, a state road or part of such state road, and may make any road of which any project comprises a part of a state road, without the express designation of such road, project or part thereof as a state road by the legislature, and may do so either without the vesting of title to such project in the State of Florida or under such provision for the latter

vesting of title in the State of Florida as may be considered advisable by the department.

"(4) When any agreement shall have been entered into or made under the provisions of this law, any public project owner which is a party thereto and/or the state road department shall be entitled and are hereby empowered to enforce the provisions of such agreement through appropriate action in any court of competent jurisdiction.

"(5) Whenever any agreement is made for operation of any project or part thereof by the state road department under the provisions of this law, the department may either operate such project or part thereof free from tolls or may fix and collect such tolls for the use thereof as it may from time to time see fit as may be provided in such agreement, and if tolls are so charged and collected the department may dispose of such tolls for any purpose and in any manner which it may deem fit and which may be provided in such agreement.

"(6) The powers conferred by this law shall be in addition and supplemental to any powers vested in the state road department under any existing law and may be exercised free from limitations imposed by any existing law. Laws 1941, c. 20555, Secs. 1-6.

"420.06. In order to carry out the objects and purposes of this chapter the Commission is authorized to acquire, own, construct, operate, maintain, improve and extend public buildings, facilities or works within the State of Florida which are of the character hereinafter specifically mentioned. All public buildings, facilities and works which the Commission is authorized to own, construct, operate and maintain as state projects must be such as can be owned and operated by an agency, department, board, bureau or commission of the State of Florida. All or any of such public buildings, facilities or works may be of a revenue producing character in order that the cost of the same or part thereof, and improvements and extensions thereto may be paid from receipts therefrom through the issue and sale or disposition of revenue bonds, notes or certificates of said Commission. The buildings, facilities and works which said Commission is hereby author-

ized to acquire, construct, operate, maintain, improve and extend are . . .

" (b) Toll bridges, or tunnels, and toll roads wherever the same are connected with or form a part of the state system of public roads. The location and construction of same shall first be approved by the State Road Department.

" (e) Said Commission is hereby authorized to collect reasonable rentals, tolls or charges for the use of public buildings, facilities or works constructed, acquired or owned by it and for the products and services of the same exclusively for the purpose of paying the expenses of improving, repairing, maintaining and operating and operating its facilities and properties and paying the principal and interest on its obligations. Said Commission is authorized by reasonable regulations to prescribe for the use of buildings, facilities, works. or projects owned and operated by it, the amount of rentals,. tolls or charges and may make and enter into contracts with any municipality, district, county or other political subdivision, board, commission, agency or department of the State of Florida for the use of said projects or sale of the products or services hereof, provided that the receipts from any project shall not be expended on any other project, except as provided in paragraph 12 hereof."

"420.10. The Commission is hereby authorized and empowered to borrow money and incur obligations, as shall be deemed proper, to effectuate all or any of the purposes of this law and to pay any expense incident thereto. To enable the Commission to borrow money for the purpose specified herein it is hereby authorized and empowered to issue its negotiable bonds, notes or certificates in its own name; the form, denominations, rate of interest, amount, place of payment, manner, place and price of sale, date or retirement and terms of redemption prior to maturity of said bonds, notes or certificates shall be fixed by said Commission. In no case shall any such bonds, notes or certificates mature later than thirty years from date of issue, or bear interest at a rate greater than six per cent per annum, or be sold at such price that the net interest costs to the Commission shall exceed six per cent to the respective maturities thereof. Provided, however, that

the Commission shall not borrow money for the purposes specified herein and issue and sell its bonds, notes or certificates except after public competitive bidding and sale thereof to the highest bidder; and after approval by the State Board of Administration as to legal and fiscal sufficiency.

"The bonds and notes authorized under this Chapter shall be issued by resolution approved by at least four of its members of the Commission; they shall be executed and signed by its chairman and attested by its secretary under the seal of said Commission. They shall recite that they are issued under authority of this Chapter which shall be referred to by number of chapter and date of approval. The said bonds of each separate issue shall be consecutively numbered and shall be recorded by the Secretary of the Commission in a book to be kept for that purpose."

"420.11. This Chapter shall without reference to any other Act of the Legislature of Florida be full authority for the issuance and disposition of the bonds, notes or certificates herein authorized, and all of same shall have all the qualities of negotiable paper under the law merchant, and shall not be invalid for any irregularity or defect in the proceedings for the issues and sale thereof, and shall be incontestable in the hands of bona fide purchasers or holders thereof for value; payment of said bonds, notes and certificates may be secured by a pledge or deed of trust of revenue from the project for the account of which same are issued. The provisions of this law shall constitute an irrepealable contract between the Commission and the holders of any bonds, notes or certificates issued pursuant to the provisions hereof. Under no circumstances shall any bonds, notes or certificates issued under this Chapter or any other indebtedness created by the Commission be construed as an obligation of the State of Florida, nor shall the State under any theory be bound therefor. They shall be solely and only the obligations of the Florida State Improvement Commission in its corporate and representative capacity and shall be secured only by such revenues as shall be pledged as security for the payment thereof."

The question of the authority and power of the Florida Improvement Commission to act under the provisions of Section

420.06 and to own, construct, operate, maintain, improve and extend public buildings was definitely and affirmatively determined in the case of State v. Florida Improvement Commission, 158 Fla. 743, 30 So. (2) 97. Like power and authority is vested in the Commission as to toll bridges or tunnels or toll roads wherever same are connected with or form a part of the state system of public roads and, therefore, what we have said in the case, supra, applies to the power and authority of the Commission in connection with the matters here under consideration and, on authority of the opinion and judgment in that case, we hold that the power and authority sought to be exercised by the Commission in this case is lawfully vested in it.

We come then to the question, "Are the certificates which the State Improvement Commission plans to issue, to all intents and purposes, bonds payable from state funds and condemned by Section 6 of Article IX of the Constitution?"

The record shows that each of the certificates validated by the respective orders of the Circuit Courts provides as follows:

"This certificate is an obligation of the Florida State Improvement Commission payable only in accordance with the terms hereof, and is not an obligation general, special, or otherwise of the State of Florida. This certificate is not a bond of debt of the State of Florida and shall not be enforceable against the State, nor shall payment hereof be enforceable out of any funds of the Florida State Improvement Commission other than the income and revenue pledged to the holder or holders of this certificate. Nothing in this certificate or in said Resolution authorizing its issuance shall be construed to authorize the Florida State Improvement Commission to contract a debt on behalf of, or in any way to obligate, the State of Florida, or to pledge, assign or encumber in any way, or to permit the pledging, assigning or encumbering in any way of, appropriations made by the legislature, or revenue derived from any source other than the revenues of said road or bridge."

It is also shown that these certificates were issued pursuant to a resolution adopted by the Commission, which resolution contained the following:

"Section 5. Said certificates are payable from, and secured by a first, exclusive, and closed lien on the income and revenue (but not the real property) derived from the fees, rentals, tolls and other charges from persons, corporations and others using or being served by, or having the right to use or having the right to be served by the said toll road or bridge. Said certificates shall be the obligations of the Commission payable only in accordance with the terms thereof, and shall not be obligations general, special or otherwise of the State of Florida. Said certificates are not a bond or debt of the State of Florida and shall not be enforceable against the State, nor shall payment thereof be enforceable out of any funds of the Commission other than the income and revenue pledged to the holder or holders of such certificates. Nothing in said certificates or in this resolution shall be construed to authorize the Board to contract a debt on behalf or in any way to obligate the State of Florida, or to pledge, assign or encumber in any way or to permit the pledging, assigning, or encumbering in any way of appropriations made by the legislature for the use and benefit of the State Improvement Commission."

In the case of State ex rel. Watson v. Caldwell, 156 Fla. 618, 23 So. (2) 855, we held:

"The section of statute creating State Improvement Commission, authorizing Commission to fix rentals, tolls and charges for use of public buildings, is not unconstitutional as authorizing issuance of state bonds for illegal purposes, in view of provision that obligations and securities undertaken shall be solely the obligations of Commission and shall be secured only by such revenues as shall be placed as security for payment thereof."

The non-liability of the State for the payment of any obligation evidenced by these certificates is as clearly shown as it was in the Watson case. See Hopkins v. Baldwin, 123 Fla, 649, 167 So. 677.

In the case of State v. State Board of Administration, 157 Fla. 360, 25 So. (2) 880, we had under consideration a proposed contract for the lease and purchase by the State Board of Administration of the Overseas Highway with the State

Road Department which obligated the Road Department to pay rentals consisting of tolls and the 80% surplus gas tax. That contract was to enable the State to acquire title to the roads and bridges built and owned by the Overseas Road and Toll Bridge District. The validity of the contract was upheld. To like effect is Bowden v. Ricker, 70 Fla. 154, 69 So. 694; Hopkins v. Special Road and Bridge District No. 4, 73 Fla. 247, 74 So. 310; State v. Escambia County, 153 Fla. 282, 14 So. (2) 576.

So the court below correctly resolved this question.

The next question to be considered is, "Is the State Improvement Commission authorized to issue revenue certificates for the construction of a road or bridge as a 'toll' road or bridge when before construction it agrees to lease the same to the State Road Department in lieu of the actual collection of tolls?" The authority of the State Road Department to enter into such a contract is found in Sec. 341.63 Fla. Statutes 1941 (same F.S.A.) which not only authorizes the Department to lease existing toll roads but it may make such contract with any owner "which has adopted or may hereafter adopt, proceedings pursuant to which such public project owner is to acquire or construct any toll revenue-producing bridge, causeway, tunnel, ferry, road toll road or any combination thereof (hereinafter in this law referred to as the 'project'), for the purpose of doing or agreeing to do any one or more of the following:

"(a) Leasing from any public project owner any project or part thereof for such period of years and under such terms and provisions, including provisions for the operation and maintenance thereof either by the public project owner or by the department, as may be considered desirable and be specified in the lease or leases.

"(b) Purchasing from any public project owner any project or part thereof under such terms and provisions, including provisions for the operation and maintenance thereof either by the public project owner or by the department, as may be specified in the purchase contract or contracts."

So the rationale is that the State Road Department is vested with power and authority to enter into the lease and

purchase contract with the Florida Improvement Commission and the Florida Improvement Commission is authorized to issue the certificates such as are involved in these cases to produce the fund with which to acquire the facilities which are to be so leased and sold to the State Road Department. Some of the questions here presented might have been obviated by the contract providing that the State Road Department would take over the respective projects after they had been constructed and begun to be operated as toll roads or toll bridges. But the difference between such a contract and that here under consideration is so minor and technical that it should not be held to alter the result. The obligations would be in the final analysis be the same. The course which has been pursued was the more direct and straightforward manner for the consummation of the result sought to be reached. We find no reason to hold that the proposed certificates or contracts back of them are invalid.

For the reasons stated, the decrees of the Circuit Courts here under consideration are respectively affirmed.

THOMAS, C. J., BARNS, J., and TAYLOR, Associate Justice, concur.