47 So.2d 627 (1950)
STATE et al.
v.
FLORIDA STATE IMPROVEMENT COMMISSION.
Supreme Court of Florida, en Banc.
July 25, 1950.
Rehearing Denied September 26, 1950.
*628 William D. Hopkins, Tallahassee, for appellants.
J. Turner Butler, Jacksonville, and Ford Thompson, Tallahassee, for appellee.
SEBRING, Justice.
The appeal is from a final decree validating an issue of revenue certificates to be used in connection with the financing of an armory to be built in the City of Leesburg, Lake County, Florida.
According to the record the armory is to be built at an estimated cost of $150,000. When completed it will be used by the Florida National Guard for military purposes. In pursuance of a plan formulated by the interested authorities for financing the project the State of Florida has appropriated the sum of $75,000, the City of Leesburg has contributed the sum of $4,000 cash and a land site valued by the State Armory Board at $21,000, and the County of Lake has agreed to contribute the sum of $50,000, toward the construction of the building.
At the present time Lake County has on hand the sum of only $10,000 with which to meet its commitment. The remaining $40,000 is to be raised by the sale of revenue certificates in the principal sum of $40,000 which are to be issued by the Florida State Improvement Commission and are to be retired in approximately 15 years from a rental fund to be accumulated in the manner hereinafter stated. The Improvement Commission proposes to use the $75,000 appropriated by the State, the $4,000 contributed by the City of Leesburg, the $10,000 contributed by Lake County, and the proceeds realized from the sale of the revenue certificates, to construct the armory on the land donated by the City of Leesburg. Upon the completion of the armory the Improvement Commission will rent the building to Lake County to be used by the Florida National Guard for military purposes. The annual rental which the County will be required to pay will be such an amount as will retire the revenue certificates as they become due and payable; and the County of Lake agrees to levy an annual ad valorem tax not to exceed one mill on all the taxable property within the County, in order to meet these rental requirements. When the certificates have been fully satisfied from the rentals raised by Lake County by means of ad valorem taxation, the armory is to be transferred by the Commission to, and is to become the property of, the State of Florida.
The questions arising on the appeal are two in number: (1) By committing itself to lease the armory under the plan and for the purposes stated is the county unlawfully proposing to apply county funds to a state purpose? (2) Does the agreement of Lake County to pay sufficient rents to the Florida State Improvement Commission to retire the revenue certificates proposed to be *629 issued, and to levy ad valorem taxes for a period of 15 years to produce such rents, amount in substance and effect to the issuance of bonds by the county without an approving vote of the freeholders of the county, in violation of section 6, Article IX of the Florida Constitution, F.S.A.?
1. Section 5, Article IX of the Florida Constitution provides, in part, that "The Legislature shall authorize the several counties * * * to assess and impose taxes for county * * * purposes, and for no other purposes, and all property shall be taxed upon the principles established for State taxation. * * *"
As early as 1902 this court held that the furnishing of an armory for housing a unit of the State militia was not a county function within the meaning of Section 5, Article IX of the Constitution and hence that the county was not authorized to expend county funds for that purpose. See State ex rel. Milton v. Dickenson, 44 Fla. 623, 33 So. 514, 60 L.R.A. 539, 1 Ann.Cas. 122.
In the case of Jordan v. Duval County, 68 Fla. 48, 66 So. 298, 299, decided 12 years later, it was held that an injunction would not lie to restrain the County of Duval from issuing bonds for the construction of an armory under a special law which required the approval of the qualified voters of the county as a condition precedent to the issuance of the bonds and which allowed the county at its discretion to place the armory "in whole or in part under the jurisdiction and at the disposal of the armory board of the state of Florida * * * upon such terms and conditions and with such limitation or reservation of the use of said armory, or any part thereof, as may by said board of county commissioners be determined to be for the best interest of said county of Duval. * * *"
In our opinion the later case of Jordan v. Duval County did not overrule the basic holding in the earlier case of State v. Dickenson nor do we regard it as controlling with respect to the financing plan which we now have before us for approval. For by the express terms of the special act involved in the Jordon case a precedent condition to the issuance of the bonds was that the approval by a majority of the qualified voters of the County should first be obtained by the County before the bonds could be issued, and  what is more to the point as respects the issue involved on this appeal  the special law empowered the County of Duval to place such limitation or reservation on the use of the armory, both as to the time of use and as to the space to be occupied by the militia, as should be determined by the county commissioners to be for the best interest of the county; thus leaving the way open for the county commissioners to determine to what extent the county should have the use of the building for purposes clearly constituting county functions.
A stipulation empowering Lake County to restrict the use to which the building may be put is not contained in the lease agreement which the County proposes to execute with the Commission, and a statute of the state which controls the use to which any armory building in the state may be put specifically provides as follows:
"(1) The term `armory', as used in this chapter, shall be understood to mean a building used primarily for the housing and training of troops, and no building will be used for those purposes, or for storing of arms and other military property, that is not under full control and supervision of the properly constituted military authorities.
"(2) The armory board shall also constitute a board for the general management and control of all armories when established, and may adopt and prescribe rules for their government and management. All United States and state military property must be kept therein, and the commanders of troops using the armories will be held responsible for the safe keeping and proper care of such property and its protection against misappropriation or loss. Armories, while occupied and in use by troops, shall be considered military posts, and be under exclusive control and jurisdiction of the officer commanding the post." Section 250.41 Florida Statutes 1941, as amended, F.S.A.
It is plain from this statute and the proposed lease agreement that not only *630 will the armory become the property of the State when the revenue certificates are paid but also that in the meantime the county will have no control over the building but the property will be under the full and exclusive control and supervision of the State Armory Board or other properly constituted military authority to be used for military purposes.
Some suggestion is made by the appellees that because of a certain legislative declaration with respect to national defense which is contained in section 250.40 (5) Florida Statutes 1941, as amended, F.S.A., the legislature has made it plain that the building of an armory by a county of the state for housing state militia now constitutes a county function and that county funds may lawfully be expended for the purpose. The section to which reference is made contains the following provision:
"Since our national military policy as enunciated in the national defense act recognized the national guard as an important and necessary component of the army of the United States, and as the defense of the country is a joint responsibility of all political divisions and sub-divisions thereof, and since the national guard is a citizen force by reason of its militia status, it is considered equitable that the expense of the maintenance of the national guard be not only shared by the state with the federal government, but that it should properly be shared also by the counties, cities and other sub-divisions of the state. As the federal government is providing liberally for the equipment and training of the national guard and the state for its administration and management, an equitable division of the responsibility of maintenance would leave with the communities in which units of the national guard are established the duty of supplying the necessary personnel and adequate housing for the organization."
While we recognize the general rule that a legislative determination to the effect that a certain project shall constitute a county function is highly persuasive as to its purpose and should not be lightly set aside by the court, the rule is subject to the limitation that where constitutional provisions are clear and explicit in terms, or made so by the history of their adoption and by long continued application and recognition in governmental proceedings, the legislature cannot give the provisions a meaning in conflict with their clear and explicit terms. See State ex rel. West v. Butler, 70 Fla. 102, 69 So. 771; Amos v. Mosley, 74 Fla. 555, 77 So. 619, L.R.A. 1918C, 482. If such were not a recognized limitation upon the general rule with respect to leggislative determinations the legislature would have the means within its grasp to fritter away or set at naught every single limitation upon the excercise of governmental power which has been inserted in the Constitution for the protection of the citizen by the simple device of declaring legislatively that such a limitation did not in fact exist, or that the language prescribing the limitation meant something other than that which was clearly stated.
In Article XIV of the Florida Constitution it is provided:
"All able-bodied male inhabitants of the State between the ages of eighteen and forty five years, that are citizens of the United States, or have declaired [declared] their intention to become citizens thereof, shall constitute the mitita [militia] of the State * * *. The Legislature may provide by law for organizing and descipling [disciplining] the Militia of the State, for the encouragement of volunteer corps, the safe keeping of the public arms * * *. The Governor, by and with the consent of the Senate, shall appoint two Major-Generals, and four Brigadier-Generals of Mititia [Militia]. * * * The officers and soldiers of the State Militia, when uniformed, shall wear the uniform prescribed for the United States, Army * * *. The Governor shall have power to call out the Militia to preserve the public peace, to execute the Laws of the State, to suppress insurrection or to repel invasion. * * * Whenever there shall be in the State of Florida a federally recognized National Guard, the same shall be sui generis and subject to the lawful orders of the Governor, who shall be Commander in Chief. * * * The National Guard shall be supported and maintained by the State of *631 Florida pursuant to provisions of law prescribed for organizing, arming, governing and disciplining said National Guard in accordance with Acts of Congress and regulations of the United States War Department thereunto pertaining." See Sections 1, 2, 3, 4, 5 of Article XIV Florida Constitution.
It is plain from the wording of Article XIV with respect to the establishment, control and maintenance of the Florida National Guard that the Guard is an arm of the State government and is in no sense such a county institution or establishment as that any particular county acting alone can be required to impose an ad valorem tax for any part of its maintenance. See State ex rel. Milton v. Dickenson, 44 Fla. 623, 33 So. 514, 60 L.R.A. 539, 1 Ann.Cas. 122.
2. But assuming for the sake of argument that the maintenance of the Florida National Guard is such a county function as will authorize a county of the State to expend county ad valorem tax money in the erection of an armory to house a unit of the Guard, it does not follow that the county would be authorized to obligate itself to levy an annual ad valorem tax for a period of 15 years in the future to take care of such a commitment. As we have heretofore stated, the legislature, under Section 5, Article IX of the Constitution, may authorize the several counties to impose taxes for county purposes. Section 6 of the same Article provides, in effect, however, that if any county of the state desires to issue bonds to carry on a county function it shall have power to do so "only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such Counties * * shall participate * * *." As to what is meant by bonds, within the purview of section 6 of Article IX, it may be said that "Any contractual device for the present funding of tax revenues contemplated to be raised or made available for reimbursement in future years, contrived to be issued as an enforceable legal security to the obligee, or his assignee, by means of which such obligee or his assignee will acquire a legal or equitable right to coerce by judicial processes the repayment of a sum of money advanced on the strength thereof, together with interest for the hire of the amount advanced, however calculated or provided to be paid upon the sum so involved, is in contemplation of amended section 6 of article 9 of the Constitution of Florida a `bond' and within the purview of the specific prohibitions and limitations of that section as to the issuance of `bonds.'" Leon County v. State, 122 Fla. 505, 165 So. 666, 667.
When sections 5 and 6 of Article IX are considered together, it is readily apparent that while section 5 authorizes the expenditure by a county of county funds in hand for a purpose lawfully declared by the legislature to constitute a county purpose, section 6 of Article IX limits the county's right to pledge for any such purpose ad valorem taxes to be levied and collected in the future by requiring that before the county may pledge such future revenues for a present county need the county shall first obtain an approving vote of the freeholders of the county who, after all, will be called upon to discharge the burden through means of ad valorem taxes levied against their property.
Under the plan of financing involved in this appeal the county intends to make its contribution to the construction of an armory which will eventually become the property of the State of Florida, not by the direct issuance of bonds, but through the device of "renting" the building from the Florida State Improvement Commission and of paying the rents by means of ad valorem taxes. While the form of the revenue certificate proposed to be issued provides, in effect, that the holder shall have no claim for enforcement against the State of Florida, other than with respect to the fund set up for payment of the certificates, the county, in its lease agreement with the Commission, unconditionally pledges that there shall be levied for 15 years, or until the certificates are paid, sufficient ad valorem taxes each year to meet the rental requirements. It is perfectly plain, therefore, that if the county is given authority to execute the lease agreement and the certificates are issued and sold pursuant to the plan, the county, should it default in its *632 rental payments, could be coerced into making an ad valorem levy against the taxable property in the county in order to meet its commitments and hence would be in precisely the same position, from a legal point of view, as though it had issued the revenue certificates in the first instance.
We conclude, therefore, that the plan which the County proposes to enter into for defraying its agreed portion of the moneys necessary to construct an armory  a project which is shown by the record to be a state and not a county function  is violative of Article IX of the Constitution and consequently that the decree appealed from should be reversed.
It is so ordered.
ADAMS, C.J., and TERRELL, THOMAS and HOBSON, JJ., concur.
CHAPMAN and ROBERTS, JJ., dissent.
CHAPMAN, Justice (dissenting).
The Florida State Improvement Commission filed its petition in the Circuit Court of Leon County, Florida, praying for the validation of Leesburg Armory Building Revenue Certificates, Series 23, in the sum of $40,000.00 issued by the petitioner. For the power and authority of the petitioner to issue the above revenue certificates and to incur said indebtedness in the sum of $40,000.00 see Chapter 420, F.S.A., as amended by Chapter 22821, Acts of 1945; Chapter 24200, Acts of 1947; and Chapter 25263, Acts of 1949. Chapter 25125, Acts of 1949. The Florida State Improvement Commission was established by Chapter 22821, Acts of 1945, and we sustained its constitutionality in State ex rel. Watson v. Caldwell, 156 Fla. 618, 23 So.2d 855. We sustained the power of the Florida State Improvement Commission under Chapter 420, F.S.A., to construct public buildings and pledge rents for the payment of revenue certificates. State v. Florida State Improvement Commission, 158 Fla. 743, 30 So.2d 97. See State v. Florida State Improvement Commission, 159 Fla. 338, 350, 351, 31 So.2d 548, 554, 555; State v. Florida State Improvement Commission, 160 Fla. 230, 34 So.2d 443.
On May 2, 1949, the Florida State Improvement Commission provided for the issuance of revenue certificates in the total sum of $40,000.00, and pertinent language of the approved resolution is viz.:
"`Leesburg Armory Building Revenue Certificates, Series 23 of Florida State Improvement Commission' dated the first day of July, A.D. 1949, numbered 1-80 inclusive, in denomination of $500.00 each and to mature serially in numerical order as follows, to-wit:

 Certificate Maturity
 Number Amount Date 
 1 - 4 $2,000 July 1, 1950
 5 - 8 2,000 July 1, 1951
 9 - 12 2,000 July 1, 1952
 13 - 17 2,500 July 1, 1953
 18 - 22 2,500 July 1, 1954
 23 - 27 2,500 July 1, 1955
 28 - 32 2,500 July 1, 1956
 33 - 37 2,500 July 1, 1957
 38 - 43 3,000 July 1, 1958
 44 - 49 3,000 July 1, 1959
 50 - 55 3,000 July 1, 1960
 56 - 61 3,000 July 1, 1961
 62 - 67 3,000 July 1, 1962
 68 - 73 3,000 July 1, 1963
 74 - 80 3,500 July 1, 1964

aggregating the sum of Forty Thousand ($40,000) Dollars, and bearing interest payable semi-annually on the first day of January and July of each year at the lowest rate obtainable * * *."
It appears by the record that the City of Leesburg, the County of Lake and the Florida State Improvement Commission have reached an agreement for the construction of an Armory at a cost of approximately $150,000.00 to be located in the City of Leesburg. The plan for financing the construction thereof is viz.: The State of Florida has allotted for the project the sum of $75,000.00. The City of Leesburg has made available for the project money and land in the sum of $25,000.00. The County of Lake has allotted to the project the amount of $50,000.00, of which $10,000.00 *633 is now available, and the remaining $40,000.00 is to be raised by the sale of the revenue certificates above referred to. The title to the property when completed is to be vested in the Florida State Improvement Commission. The Improvement Commission, in turn, is to enter into a lease for a term of years with the County of Lake for a stipuated monthly rental of the Armory and with these monthly rentals the Improvement Commission will pay the reveenue certificates as they mature. Lake County will pay the monthly rental out of an ad valorem tax of .4 mills levied annually against the taxable property of Lake County, as provided for by Chapter 25950, Special Acts of 1949, and by Chapter 25125, Acts of 1949, Laws of Florida.
Article 14 of the Constitution of Florida, F.S.A., adopted at the General Election of 1938: Section 1 made all able bodied male inhabitants of Florida between 18 and 45, citizens of Florida and of the United States, the militia of the State of Florida. Section 2 made it the duty of the Legislature to provide laws for organizing and disciplining the militia of Florida; enact laws for the encouragement of volunteer corps and "the safe keeping of the public arms", and for a guard at the State Prison. Pursuant thereto the Legislature enacted Chapter 25112, Acts of 1949, Section 250.40, F.S.A., creating a State Armory Board. Among the duties of the Armory Board are to approve plans for armories and other buildings in Florida.
Section 250.40(6) authorizes the Armory Board to receive from counties, municipalities and other sources, donations of land and contributions of money to aid in providing, improving and maintaining an arsenal, armories, camp site, target range and other facilities throughout the State of Florida and any property so donated shall be held as other property for the use of the State of Florida; counties and municipalities are authorized to donate lands by deed, leases and contributions of money for purposes set forth, to issue bonds or certificates of indebtedness, provide funds for such purposes. The Board of County Commissioners are authorized to levy taxes, not to exceed one mill, to provide funds for the construction of armories or the retirement of bonds or certificates of indebtedness issued to raise funds for the construction of armories.
Section 250.40(7): Counties and municipalities are authorized to construct armories on State owned lands which may be made available for such purposes by action of the Armory Board.
Section 250.40(8): The counties and municipalities are authorized to grant to the State Armory Board, for military uses, by deed or long term leases, property which has been acquired or buildings which may have been constructed, for use as armories and rifle ranges.
Section 250.40(10): The County Commissioners or municipal authorities may, in their discretion, appropriate a sufficient sum of money not otherwise appropriated, to pay the necessary expenses of any unit of the organized militia of Florida located in their respective counties or municipalities.
Supplementing Article 14 of the Constitution of Florida, supra, and broad plenary power in the form of Acts applicable to the many political units of Florida, Chapter 25950, Special Acts of 1949, grants the Board of County Commissioners of Lake County power to construct an armory or armories in Lake County. Section 3 thereof provides "that said County of Lake be and it is hereby authorized to assess, levy and collect an ad valorem tax on all the property subject to taxation to an amount not to exceed .4 mills for the purpose of purchasing, acquiring or leasing said armory or armories".
The controlling question here is whether or not the levy of the.4 mills on all the taxable property of Lake County, and the money arising therefrom is kept in a special fund and used by the County Commissioners to pay the monthly rentals on the armory stipulated to be paid to the Improvement Commission, and the rentals by the Improvement Commission used exclusively to service the proposed certificates of indebtedness, violates Section 6 of Article 9 of the Constitution of Florida, which requires an approval thereof by a majority of the freeholders of the County of Lake.
*634 Our adjudications recognize a clear distinction between bonds issued on the part of certain political units of Florida under the provisions of Section 6 of Article 9 of the Constitution of Florida, which pledge the taxing power of said political unit and additional thereto require an approval by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in said political unit shall participate, and that class of financing in Florida known as revenue certificates by which the political unit obligates itself to pay at designated times and stated amounts "solely from a certain designated fund" and are usually issued and paid from the operation of particular proprietary property to meet immediate and imperative public needs. The receipts or net receipts arising from the operation of the proprietary property are pledges only to the payment of the obligations. Obligations of the latter class are not bonds under the several provisions of Section 6 of Article 9.
The Florida State Improvement Commission will issue the Armory Certificates of indebtedness now before the Court. The Armory is to be located at Leesburg, Florida, but the title to the property ultimately will rest in the State of Florida. The State of Florida has allotted $75,000.00 and the City of Leesburg the sum of $25,000.00, and the remaining sum of $50,000.00 is to be contributed by the County of Lake, and of this amount $10,000.00 is now available. The Armory is to be constructed immediately and made available for use and occupancy by the militia and National Guard of Lake County, as well as other military units of the State of Florida, at an early date. The Improvement Commission, after the Armory is cleared of debt, will convey the Armory to the State of Florida.
The Board of County Commissioners of Lake County, pursuant to the General and Special Acts, supra, intend to enter into a contract-lease arrangement of the Armory with the Improvement Commission and pay therefor a monthly rental raised by an ad valorem tax of .4 mills on all the taxable property of Lake County. The Armory will be used by the militia and National Guard or for other military purposes authorized by law in behalf of the national defense. We find ample statutory authority to consummate the entire program as outlined by the respective parties and reflected by the record.
Counsel for appellants contend that the annual levy of .4 mills on the taxable property of Lake County authorized by both the General and Special Acts, supra, violates the provisions of Section 6 of Article 9, supra. The answer to this contention is our holding in the case of Jordan v. Duval County, 68 Fla. 48, 66 So. 298. An Armory was to be located in Duval County and authorized by a Special Act. The cost of the Armory was financed by a tax on all the property of Duval County. This Court sustained the tax levy and the construction of the Armory in Jacksonville on the theory that the Armory was a "county purpose" for which taxes could be imposed under the provisions of Section 5 of Article 9 of the Constitution of Florida. See Rushton v. State, 75 Fla. 422, 78 So. 345; Seaboard Air Line R.R. Co. v. Peters, Fla., 43 So.2d 448; State v. Florida State Improvement Comm., 159 Fla. 338, 31 So.2d 548.
ROBERTS, J., concurs.