To: Charles H. Hood Clerk Circuit Court Palatka
QUESTION:
Is a noncharter county authorized by general statute to make interest payments pursuant to a lease-purchase agreement, regardless of whether the interest rate is specified in the agreement?
SUMMARY:
Section 125.031, F. S., does not of itself authorize the payment of finance charges or interest pursuant to a lease-purchase agreement. A contractual arrangement such as a lease-purchase agreement providing for payments on a deferred basis would be in the nature of a revenue certificate as provided in s.125.01(1)(r), F. S., and under s. 125.01(1)(r) and (3), may therefore provide for the payment of interest subject to the interest rate limitations prescribed by s. 215.685, F. S., if paid from nonad valorem taxes and no mortgage, lien, or security interest on or in the county's property has been given. No lien or security interest in the equipment or county's property may be given nor may ad valorem tax revenues be pledged unless approved by county voters in a referendum.
It appears from your letter that you are asking the question in your capacity as county auditor and custodian of all county funds. Your letter, homever, fails to specify the type of property or equipment which is the subject of the lease-purchase agreement or the purpose to be accomplished by the acquisition or use of such property. It is a fundamental principle of law that county funds may be spent only for an authorized county purpose. See, e.g., AGO's 073-327 and 074-269. Whether a particular expenditure of funds will serve a valid and authorized county purpose is to be determined by the courts from the facts and circumstances of each case, see Escambia County v. Board of Pilot Commissioners,42 So. 697 (Fla. 1906); it is assumed, however, for the purposes of this inquiry that the lease and purchase of such property serve a valid county purpose authorized by law.
A copy of correspondence between other parties, which you submitted with your request, suggests that s. 125.031, F. S., `confers all the authority needed by counties to make interest payments' when `making lease purchases' but also indicates that the `Auditor General's field supervisor for [Putnam County] does not believe there is adequate authority.' Section 125.031
provides:
 Counties may enter into leases or lease-purchase arrangements
relating to properties needed for public purposes for periods not to exceed 30 years at a stipulated rental to be paid from current or other legally available funds, and may make all other contracts or agreements necessary or convenient to carry out such objective. The county shall have the right to enter into such leases or lease-purchase arrangements with private individuals, other governmental agencies, or corporations. When the term of such lease is for longer than 24 months, the rental shall be payable only from funds arising from sources other than ad valorem taxation. Such leases or lease-purchase arrangements shall be subject to approval by the board of county commissioners, and no such lease or lease-purchase contract shall be entered into without said approval. (Emphasis supplied.)
Thus, the statute expressly authorizes noncharter counties to enter into lease-purchase agreements at stipulated rentals, provided that, when the terms of such leases are for longer than 24 months, the rental shall not be paid from ad valorem taxes. While s. 125.031 authorizes the payment of rent from legally available funds of the county, it does not purport to authorize, nor does it mention, the payment of finance charges, interest, or charges in the nature of interest in such lease-purchase arrangements. The rule of statutory construction that when a statute enumerates the things upon which it is to operate, it must be construed as excluding from its operation all things not expressly mentioned — expressio unius est exclusio alterius — is thus applicable so that by clear implication the payment of finance charges or interest in lease-purchase arrangements entered into under the authority of s. 125.031 is prohibited. See Thayer v. State, 335 So.2d 815 (Fla. 1976); Interlachen Lakes Estates, Inc. v. Snyder, 304 So.2d 433 (Fla. 1974); and Ideal Farms Drainage District v. Certain Lands, 19 So.2d 234 (Fla. 1944). Cf. State ex rel. Alsop v. Pierce, 19 So.2d 799 (Fla. 1944) (a legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way), and Reno v. Barquet, 358 So.2d 230 (3 D.C.A. Fla., 1978). Nor does s. 125.01(3)(a), which provides in pertinent part that a county has the power to purchase or lease real or personal property, purport to authorize or otherwise impliedly provide for the payment of finance charges or interest; the payment of such charges is therefore not authorized under its provisions. I note that Addendum #1 to Lease No. 1041, which you subsequently submitted for my consideration, specifically provides that the `rental payments provided [therein] are not, in fact, rental payments for the use of the equipment,' but consist of a reimbursement to the lessor for moneys expended by it on behalf of the lessee in acquiring the equipment as nominee for the lessee and for interest thereon which has been calculated upon the unreimbursed expenditure outstanding from time to time. The lease agreement and the addendum and schedule incorporated therein would thus appear to be a contractual device to finance the acquisition or purchase of the equipment which is the subject of such financing arrangement.
While an express power (to enter into lease-purchase arrangements at a stipulated rental for a designated period of time) duly conferred may include the implied power to use the means necessary to make the express power effective or to carry out the expressed objective or purpose of a statute, such implied authority does not warrant the exercise of a substantive power not conferred. In order for a power to be implied from an express grant of power, it must be necessary, indispensable, or essential to the attainment of the declared purpose or object of the public officer or body. Southern Utilities Company v. City of Palatka, 99 So. 236 (Fla. 1923); Molwin Investment Company v. Turner, 167 So. 33 (Fla. 1936); and AGO's 073-374 and 058-228 (power that is indispensable or essential to valid purpose of statute may be inferred or implied from authority expressly given). Although counties have been given the express power to make and enter into leases and lease-purchase arrangements at stipulated rentals for a designated term of years under the provisions of s. 125.031, F. S., the payment of finance charges, interest, or charges in the nature of interest pursuant to a contractual financing device or plan, such as the one in question, is not affirmatively and necessarily implied therefrom or in terms expressly authorized by s. 125.031
itself. Nor does s. 125.01(3)(a), F. S., expressly or impliedly authorize such payments. Compare s. 287.042(1), F. S., which expressly authorizes the Division of Purchasing of the Department of General Services to, inter alia, contract for the purchase of commodities required by the state and its agencies by installment sales or lease-purchase contracts `which may provide for the payment of interest on unpaid portions of the purchase price . . .'; and s. 287.062(2), F. S., which states that `[w]hen any contract requires deferred payments and the payment of interest, such contract shall be submitted to the Comptroller of the state for the purpose of preaudit review and approval prior to acceptance by the state. . . .' Cf. AGO 079-72 in which this office concluded that the amended statute authorizing the purchase of commodities by installment sales or lease-purchase contracts (s. 287.042) does not authorize a state agency to grant a security interest in the personal property being purchased. Thus, I am of the opinion that neither s. 125.031 nor s. 125.01(3)(a) in terms per se authorizes a noncharter county to make interest payments pursuant to a lease-purchase agreement within the contemplation of these sections.
While the contract in question in the instant inquiry states that it is in the form of a lease (`for the convenience of the parties,' see paragraph 15 of the lease and addendum #1 thereto), the contract expressly provides that the lessee (the county) shall hold title to the equipment under the terms of the agreement. Moreover, addendum #1 specifically declares that the lessee is the owner of the equipment and that the rental payments prescribed in the lease are not, in fact, rental payments for the use of the equipment. Under a true lease-purchase agreement, title remains with the lessor until payment of a final sum by the lessee-purchaser. See generally 79 Supp. C.J.S. SecuredTransactions s. 10; cf. Bell v. Itek Leasing Corporation,555 S.W.2d 1 (Ark. 1977), in which the court stated that when a contract by which the finance company proposed to `lease' printing equipment provided that `lessee' would make initial payment of $1,498.05 and 60 additional payments of $299.61 each, `lessee' should pay all taxes and insurance on property and incur every risk of loss or damage to property, finance company would have same remedies upon default that would be available to the conditional seller or mortgagee even if default occurred at end of first month, and `lessee' would join the finance company in executing financing statements; and when the financing company, near end of term would offer `lessee' option of buying equipment for 10 percent of its original contract price, such contract would be in actuality an `installment sales contract.' The contract in the instant inquiry not only provides that the county possesses title to the equipment but also that the lessor possesses a `security interest' in the equipment and in all attachments, parts, additions, and replacements thereto. The county agrees to hold the lessor harmless in the event of any subsequent claim in connection with unacceptable equipment and to reimburse the lessor for all expenses, including, but not limited to, attorneys' fees and court costs. The county is further obligated under the contract to pay all taxes and insurance on the equipment and assumes the entire risk of loss; it also agrees to execute any such documents requested by the lessor, and, in addition, appoints the lessor as its attorney to execute any such documents on behalf of county-lessee and to do such other acts as the lessor deems necessary to protect the lessor's interests in the equipment. The agreement further provides that the `[l]essee, at its expense, shall protect and defend lessor's interests . . . .' In the event of default, the lessor may demand payment for the full balance of the term of the lease as immediately due and payable, may enter into the premises, take possession of the equipment, and remove it, and may sell or re-lease the equipment, the proceeds of which shall be applied to the payment of the remaining unpaid total balance of the lease. In addition, the lessor has `all of the rights of a secured party under Florida's Uniform Commercial Code.' These remedies are cumulative and may be exercised concurrently or separately.
It therefore appears that the contract in question is more in the nature of an installment sales contract than a lease-purchase agreement, although the divergent terms used within the agreement and attached addendum inhibit a precise characterization of the agreement. The general objective of the contracting parties, however, seems to be the financing of the purchase of the subject equipment or property. I am, of course, without the authority to invalidate an existing contract. The validity of an executed contract is a judicial question which must be resolved by the courts. I would note, however, this office's opinion in AGO 080-9, in which I recently considered a proposed contract for the sale and purchase of a computer by a municipality, which contract contained many provisions similar to the terms contained in the contract in the present inquiry. In AGO 080-9, it was my opinion that, until judicially determined to the contrary, a municipality could not finance the purchase of a computer under a sale and purchase agreement and financing arrangement granting a security interest in the equipment without the approval of the electors of the municipality as mandated by s. 12(a) of Art. VII, State Const.Cf. AGO 079-18, concluding that counties are permitted to borrow money to be repaid over a 3-year period for the purpose of making improvements to county roads provided that no mortgage is required and the money used for repayment is derived from uncommitted funds and non-ad valorem tax revenues, and AGO 078-110, concluding that a municipality may pledge non-ad valorem tax revenues, if available and not previously encumbered, to purchase personal property but may not, in the absence of an approving referendum, finance the purchase of such property by borrowing money and giving a lien or mortgage on the property to be purchased as further or additional security for the loan. See s. 125.01(1)(r), F. S., which expressly authorizes counties to `borrow and expend money, and issue bonds, revenue certificates, and other obligations of indebtedness . . . .'
In state v. Florida State Improvement Commission, 47 So.2d 627,631 (Fla. 1950), the court, in considering what constituted a bond within the purview of s. 6, Art. XI, State Const. 1885 (the precursor of s. 12, Art. VII, State Const. 1968), stated:
 [I]t may be said that `Any contractual device for the present funding of tax revenues contemplated to be raised or made available for reimbursement in future years, contrived to be issued as an enforceable legal security to the obligee, or his assignee, by means of which such obligee or his assignee will acquire a legal or equitable right to coerce by judicial processes the repayment of a sum of money advanced on the strength thereof, together with interest for the hire of the amount advanced, however calculated or provided to be paid upon the sum so involved, is in contemplation of amended section 6 of article 9 of the Constitution of Florida a `bond' and within the purview of the specific prohibitions and limitations of that section as to the issuance of `bonds."
See also Hollywood, Inc. v. Broward County, 90 So.2d 47, 51 (Fla. 1956), in which the court stated that a scheme of financing which directly or indirectly obligates a taxing unit such as a county to pay a sum with interest extending over a period of years is in effect an attempt to create a binding, continuing, interest-bearing contract obligation to pay money in the future and is subject to the constitutional provision granting the power to issue bonds other than refunding bonds only after an approving referendum, and AGO 079-18. Cf. AGO 077-14, in which this office considered whether a county had the power to finance purchases of real property under a plan in which repayment of the principal and interest would be paid from uncommitted racetrack or state revenue funds. It would thus appear that a contractual arrangement such as a lease-purchase agreement providing for payments on a deferred basis would be in the nature of a revenue certificate as provided for in s. 125.01(1)(r), F. S., when funded by non-ad valorem tax revenues in light of s. 125.01(3), which specifically authorizes the county to enter into contractual obligations and to purchase or lease personal property.
While neither the Constitution nor the statutes of the state provide that the state or its governmental units shall be immune from the payment of interest on its obligations, such immunity has been declared to be an attribute of sovereignty and is implied for the benefit of the state. See, e.g., Treadway v. Terrell,158 So. 512, 517 (Fla. 1935), in which the court quoted United States v. North Carolina, 136 U.S. 211 (1890), and stated:
 `A State is not liable to pay interest on its debts, unless its consent to do so has been manifested by an act of its legislature, or by a lawful contract of its executive officers. . . .' Such immunity is an attribute of sovereignty and is implied by law for the benefit of the state; and the immunity may be waived in any way that in manifested or authorized by statute . . . .
And see Duval County v. Charleston Engineering Contracting Company, 134 So. 509 (Fla. 1931); Dade County v. O. K. Auto Parts of Miami, 360 So.2d 441 (3 D.C.A. Fla., 1978); Broward County Port Authority v. Arundel Corporation, 206 F.2d 220 (5th Cir. 1953); and 20 C.J.S. Counties s. 306. Thus, in the absence of statute or an express lawful agreement to the contrary, counties are not liable for interest on their obligations.
While s. 125.031, F. S., does not in terms authorize the payment of interest or finance charges in lease-purchase agreements, counties are expressly authorized to `borrow and expend money, and issue bonds, revenue certificates, and other obligations of indebtedness, which power shall be exercised in such manner, and subject to such limitations, as may be provided by general law.' Section 125.01(1)(r), F. S. Moreover, the enumeration of power in s. 125.01 is not to be deemed exclusive or restrictive but rather `shall be deemed to incorporate all implied powers necessary or incident to carrying out such enumerated power, including, specifically, the authority to expend funds, enter into contractual obligations and purchase or lease and sell or exchange real or personal property.' Section 125.01(3)(a). The provisions of s. 125.01 are to be liberally construed in order to effectively carry out the purpose of s. 125.01(3)(b). In State v. Orange County, 281 So.2d 310 (Fla. 1973), the Florida Supreme Court held that a noncharter county has the power to enact a home rule ordinance authorizing it to acquire and construct county capital projects and to issue revenue obligations which are payable solely from the county's share of racetrack and jai alai funds without an approving referendum, to finance the cost of such projects. The court noted that
 [i]nstead of going to the Legislature to get a special bill passed authorizing such building fund revenue bonds, the Orange County Commissioners under the authority of the 1968 Constitution and enabling statutes now may pass an ordinance for such purpose, as they did in this case, because there is nothing inconsistent thereto in general or special law. On the contrary, there is ample delegated authority for such purpose. [281 So.2d at 312.]
This office has previously stated that, when the authority of a county to issue revenue certificates exists, such authority necessarily implies that the county pay interest on these obligations. See AGO 058-164 in which this office concluded that a county
 . . . may contract to pay interest on county obligations only where they are by statute expressly authorized to enter into contractual arrangements providing for payment on a deferred basis. . . . Where the authority to issue revenue certificates does exist, such authority, by implication, though not expressed, would authorize the county to pay interest.
Section 125.01(1)(r), F. S., expressly authorizes a county to issue bonds, revenue certificates, and other obligations of indebtedness. Section 215.685(1), F. S., provides that bonds, certificates, or any other obligations of any type or character
authorized and issued by counties may bear interest at a rate not to exceed 7.5 percent per annum. Pursuant to subsection (2) of that section, upon the request of the issuing county, and when it appears to be in the best interest of the public, the State Board of Administration may authorize, for a specific issue of bonds, certificates, or other obligations of any type or character authorized and issued by a county, a rate of interest in excess of the maximum rate set by law. While s. 215.685(3) declares that all special or general laws in conflict therewith are expressly repealed and superseded by s. 215.685, that section does not affect or apply to any law authorizing bonds or other obligations having a higher interest rate limitation or no interest rate limitation. Section 215.685(3). See also s. 130.012, F. S. I am therefore of the opinion that any such bonds, revenue certificates, or other obligations of indebtedness of any type or character may bear or provide for the payment of interest, subject to the maximum rate of interest prescribed in s. 215.685, provided that ad valorem tax revenues have not been pledged or a lien or security interest on or in the county's property has not been given in the absence of an approving referendum.
Prepared by: Joslyn Wilson, Assistant Attorney General