BOOK *v.* STATE OFFICE BUILDING COMMISSION ET AL.

[No. 29,608. Filed April 2, 1958.]

122

124

126

*William H. Sparrenberger,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, and *Ellen Anne Lloyd,* Deputy Attorney General, for appellees.

*Joseph J. Daniels* and *Baker & Daniels,* of Indianapolis, *amici curiae.*

BOBBITT, J.—Appellant brought this suit as a taxpayer to enjoin appellees as members of the State Office Building Commission, hereinafter referred to as the "Commission," from proceeding further in the construction of a State Office Building as provided by the Act[1] which created and fixed the powers and duties of the Commission.

Defendants-appellees' demurrer was sustained, and plaintiff-appellant refusing to plead further, judgment was rendered accordingly. The sustaining of the demurrer is the sole error assigned.

The complaint for injunction alleges that appellant is a taxpayer and that the appellee, State Office Build-

---

1. Acts 1953, ch. 221, p. 803, as amended by Acts 1957, ch. 304, p. 827, being §§60-2101 to 60-2134, Burns' 1951 Replacement (Cum. Supp.).

ing Commission, "is a public body corporate and politic," organized and existing by virtue of ch. 221 of the Acts of 1953, as amended by ch. 304 of the Acts of 1957; and that the other appellees are members of such Commission, except John A. Whitehead, who is Executive Director.

That pursuant to such Acts the Commission is authorized to acquire a site located in the City of Indianapolis and to construct and erect thereon a State Office Building suitable and adequate to house offices of the various departments and agencies of the State Government; and to provide funds to carry out the provisions of the Act the Commission is authorized to issue and sell interest-bearing State Office Building revenue debentures, and to enter into agreements for the use and occupancy of such building with the various State departments and agencies.

That pursuant to the provisions of such Acts the Commission has adopted a resolution proposing to issue revenue debentures as provided in the Acts.

That §13 of ch. 221 of the Acts of 1953 appropriated the sum of $50,000 from the general fund of the State of Indiana for the purpose of providing funds for the payment of preliminary expenses of the Commission, and that the Commission has already expended a portion of this appropriation and will, unless enjoined, make further expenditures therefrom.

The complaint further alleges that such Acts, together with a resolution adopted by the Commission and attached to the complaint as Exhibit "A," are unconstitutional and void in the following particulars:

(a) That the Act, as amended, and the resolution of the Commission purport to allow a person to hold more than one lucrative office at the same time in violation of Art. 2, §9 of the Constitution of Indiana;

(b) That the Act, as amended, and the resolution of the Commission "purport" to allow a member of the Legislature to hold an administrative appointment in violation of Art. 3, §1 of the Constitution of Indiana;

(c) The Act, as amended, constitutes an improper delegation of legislative authority in violation of the provisions of Art. 4, §1 of the Constitution of Indiana in that the Commission is authorized to select the site for the proposed building and to determine, without limitation, the amount of debentures to be issued, the cost of the building, and the amount of rental to be paid for space therein;

(d) That §§19 and 21 of the Act of 1953, as amended, violate Art. 4, §19 of the Constitution of Indiana in that the subjects of such sections are not embraced in the title of the Act;

(e) That such Act, as amended, is a special law in violation of Art. 4, §23 of the Constitution of Indiana;

(f) That the Act, as amended, and the resolution of the Commission are in violation of Art. 4, §30 of the Constitution of Indiana in that they purport to permit a member of the Legislature to be appointed to a civil office of profit;

(g) That the Act, as amended, violates Art. 5, §24 of the Constitution of Indiana in that it permits the Governor and Lieutenant Governor to be appointed to another office during the term for which they have been elected;

(h) That the Act, as amended, violates Art. 10, §3 of the Constitution of Indiana in that it purports to appropriate State funds to pay for the use and occupancy of the proposed building for a period of time in excess of the current biennium;

(i) That the Act, as amended, violates Art. 10, §3 of the Constitution of Indiana because it purports to

authorize expenditure of State funds without proper appropriation therefor;

(j) That the Act, as amended, violates Art. 4, §1 of the Constitution of Indiana because it attempts to impose duties and obligations upon the State Treasurer without express legislative authorization therefor;

(k) That the Act, as amended, violates Art. 10, §5 of the Constitution of Indiana in that it purports to permit agencies or departments of the State to enter into agreements with the Commission that would commit such agencies or departments to obligations which would constitute a debt of the State of Indiana;

(l) That said Act, as amended, would further violate such Art. 10, §5 by purporting to authorize the Commission to issue revenue debentures for the purpose of financing the proposed State Office Building; and

(m) That the Act, as amended, creates a corporation other than a banking corporation by special Act of the General Assembly in violation of Art. 11, §13 of the Constitution of Indiana.

The complaint further alleges that the Commission intends to proceed with the issuance of such debentures and the execution of such agreements for use and occupancy, and unless the defendants (appellees) are enjoined from so doing, improper expenditures will be made from the general fund of the State of Indiana in violation of the Constitution of Indiana to the "irreparable damage of the plaintiff herein and all other taxpayers of the State of Indiana;" and that plaintiff (appellant) does not have an adequate remedy at law.

The prayer is for permanent injunction against the taking of any further action with respect to the issuance of such revenue debentures and from incurring any further expense and paying out any further portion of the $50,000 appropriation hereinabove mentioned.

Chapter 221 of the Acts of 1953, as amended by ch. 304 of the Acts of 1957, being §§60-2101 to 60-2134, Burns' 1951 Replacement (Cum. Supp.), hereinafter referred to as the "Act," creates a State Office Building Commission and authorizes it to acquire a site within the City of Indianapolis, Indiana, and to construct and erect thereon with all necessary equipment, a State Office Building suitable and adequate to house the offices of the various departments and agencies of the State Government. In order to provide funds to carry out the provisions of the Act, the Commission is authorized, pursuant to resolution, to issue and sell interest-bearing State Office Building revenue debentures, and for the purpose of paying the principal and interest on such debentures when issued, the Commission is authorized to enter into appropriate agreements with the various State departments and agencies for the use and occupancy of such building.

On September 18, 1957, the Commission, pursuant to the provisions of the Act, adopted a resolution for the issuance of such revenue debentures, and approved and made a part of such resolution the form of the proposed debentures and a form of an agreement for the use and occupancy of the proposed building by the various State departments and agencies.

The debentures are to be executed on behalf of the Commission, signed by the chairman of the Commission, and attested by the secretary thereof with the seal of the Commission attached. The Treasurer of the State is made Registrar of the debentures, and is authorized to pay interest coupons as they become due.

The debenture itself provides that each is one of a series authorized "pursuant to and in full conformity with the Constitution and laws of the State of Indiana,

including particularly Chapter 221 of the Acts of the General Assembly of Indiana, 1953, as amended by Chapter 304 of the Acts of the General Assembly of Indiana, 1957, (Sections 60-2101, *et seq.* of Burns' Indiana Statutes)"; that such debentures are payable as to principal and interest "solely and only from and are secured exclusively by pledge of the net income and revenues of said State Office Building, and this revenue debenture does not constitute an indebtedness of the State of Indiana within the meaning or application of any constitutional provision or limitation"; that the Commission will fix a "schedule of rates and charges for the use and occupancy of said building" which "will produce income and revenues sufficient to pay expenses of operation, maintenance and repair of said building," and to pay the interest on and principal of all of such debentures as they become due, and, further, that all of the net revenues of such building have been pledged and will be set aside in a special fund for such purposes.

It is further provided, by resolution, that the proceeds of all of the debentures shall be held by the Treasurer of the State "as a special trust account for disbursement on orders of the Commission," and that all disbursements for the maintenance and repair of the building shall be made on orders of the Commission.

The resolution further provides that the Commission shall carry insurance against the loss of use and occupancy of the building on account of "fire, windstorm or other calamity."

We approach the questions here presented ever mindful that our deliberations must be guided by the following and well-established rules of statutory and constitutional construction:

(1) A statute is presumptively valid[2] and will not be overthrown as unconstitutional if it can be sustained on any reasonable basis;[3]

(2) It is the duty of courts to uphold Acts of the Legislature if it is possible to do so within rules of law,[4] and where there is a doubt as to the constitutionality of a statute, it must be upheld;[5] and

(3) The burden is on the party attacking the constitutionality of the statute to establish the invalidating facts;[6] and its invalidity must be clearly shown.[7]

A statement by Judge Crumpacker in *Scoopmire* v. *Taflinger* (1944), 114 Ind. App. 419, at page 428, 52 N. E. 2d 728, is, we believe, applicable to the situation which is presented by the record here, and is as follows:

"Within the limits necessary for the preservation of our form of federal and state governments and the basic principles upon which they rest, the

2, 3. *State ex rel. Robertson* v. *Circuit Court of Lake Co.* (1939), 215 Ind. 18, 29, 17 N. E. 2d 805; *Richmond Baking Co.* v. *Dept. of Treasury* (1939), 215 Ind. 110, 115, 18 N. E. 2d 778; *Cox* v. *State* (1932), 203 Ind. 544, 552, 181 N. E. 469; *State ex rel. Mavity* v. *Tyndall* (1947), 225 Ind. 360, 364, 74 N. E. 2d 914 (Appeal dismissed, 333 U. S. 834); *Dept. of Financial Institutions* v. *Holt, etc.* (1952), 231 Ind. 293, 302, 108 N. E. 2d 629; *Inheritance Tax Div.* v. *Estate of Callaway* (1953), 232 Ind. 1, 5, 110 N. E. 2d 903.

4. *Fairchild, Prosecuting Atty., etc.* v. *Schanke et al.* (1953), 232 Ind. 480, 483, 113 N. E. 2d 159; *Peden et al.* v. *Board of Review of Cass County* (1935), 208 Ind. 215, 227, 195 N. E. 87; *Klink* v. *State ex rel. Budd* (1935), 207 Ind. 628, 632, 194 N. E. 352, 99 A. L. R. 317.

5. *State ex rel. Johnson* v. *Clayton* (1937), 211 Ind. 327, 330, 7 N. E. 2d 32; *Groves* v. *Board of Commissioners, Lake County* (1936), 209 Ind. 371, 380, 199 N. E. 137; *Spencer* v. *Knight* (1912), 177 Ind. 564, 98 N. E. 342.

6. *Illinois Steel Company* v. *Fuller* (1939), 216 Ind. 180, 185, 23 N. E. 2d 259; *Weisenberger* v. *State* (1931), 202 Ind. 424, 431, 175 N. E. 238; *Jamieson* v. *The Indiana Natural Gas and Oil Company et al.* (1891), 128 Ind. 555, 569, 28 N. E. 76, 12 L. R. A. 652.

7. *Bolivar Twp. Bd. of Fin. of Benton Co.* v. *Hawkins* (1934), 207 Ind. 171, 197, 191 N. E. 158, 96 A. L. R. 271; *Powell* v. *State* (1923), 193 Ind. 258, 260, 139 N. E. 670.

constitutions of both state and nation must be construed to the end that public progress and development will not be stifled and that public problems, with their ever increasing complexity, may be met and solved to the best interests of the public generally."

The above statement is in harmony with the fundamental rule that while principles never change, they must, in their application, constantly be adapted to new questions and conditions which arise because of an ever-expanding economy and the progress of society.

We shall consider the questions raised and discussed in appellant's brief in the order in which we think they merit consideration in relation to the result which we have reached, and not as they appear in such brief.

*First:* Appellant asserts that the Commission is not a separate corporate entity, "but is in reality, the State of Indiana." We think this question has already been answered in the negative by recent opinions of this court.

In *Ennis* v. *State Highway Commission* (1952), 231 Ind. 311, 108 N. E. 2d 687, the identical question here presented was considered in relation to the Indiana Toll Road Act.[8] Section 3 of the Toll Road Act provides "The commission hereby created is a body both corporate and politic in the State of Indiana . . . ." and that the exercise by the Toll Road Commission of the powers conferred by the Act "shall be deemed and held to be essential governmental functions of the State . . . ." We there held, at page 324 of 231 Ind., page 694 of 108 N. E. 2d, that:

"The toll road commission here created is a commission of the state created for a public purpose.

8.  Acts 1951, ch. 281, p. 848, being §§36-3201—36-3222, Burns' 1949 Replacement (Cum. Supp.).

*Application of Oklahoma Turnpike Authority*
(1950), 203 Okla. 335, 221 P. 2d 795. It could not
embark on an enterprise of a private character.
*State ex rel.* v. *Ferguson* (1951), 155 Ohio St. 26,
97 N. E. 2d 660. Despite the fact that the commission is given the characteristics of a corporation,
it is still a commission of the State of Indiana."

This question was again raised in *Indiana State
Toll-Bridge Commission* v. *Minor* (1957), 236 Ind. 193,
139 N. E. 2d 445, where this court construed the following provision of the Toll-Bridge Act:[9]

"There is hereby created a body corporate under
the name of Indiana state toll-bridge commission
which shall have power to contract and be contracted with, to sue and to be sued in that name
and to adopt a seal and alter the same at pleasure."

At page 449 of 139 N. E. 2d we said:

"The Indiana State Toll-Bridge Commission is a
separate corporate entity, and although it can be
considered an instrumentality and agency of the
state, it is not the state in its corporate sovereign
capacity."

Section 1 of the State Office Building Act provides:

"There is hereby created as a public body corporate and politic a state office building commission. Said commission shall have power to sue
and be sued, plead and be impleaded, adopt and
have a corporate seal, make rules and bylaws for
the management and regulation of its affairs, and
to do all things necessary or convenient to carry
out the powers given in this act."

It seems to us that if the above language in the Toll
Road Act created a corporation for a public purpose,
and the language used in the Toll-Bridge Act created

___

9. Acts 1939, ch. 79, §1, p. 461, being §36-3001, Burns' 1949
Replacement.

a separate entity which might be considered as an instrumentality of, but not the State in its corporate sovereign capacity, it must follow that the Legislature, by the use of almost identical language in the State Office Building Act, created the same kind of creature. It is, therefore, our opinion that the State Office Building Commission is a separate corporate body created as an instrumentality of the State for a public purpose, but it cannot be considered as the State of Indiana in its corporate sovereign capacity.

Appellant further asserts in this connection that if the State Office Building Act does create a corporation it is one other than a banking corporation created by a Special Act in violation of the provisions of Art. 11, §13 of the Constitution of Indiana.

In *Ennis* v. *State Highway Commission, supra* (1952), 231 Ind. 311, 108 N. E. 2d 687, we held that the Toll Road Commission was not a corporation within the meaning of Art. 11, §13 of the Constitution of Indiana, and at page 325 of 231 Ind., page 694 of 108 N. E. 2d, said:

"The constitutional debates on the Constitution as adopted in 1851 show the intent to restrict Section 13, Article 11, to private corporations only. This court has extended this section to cover municipal corporations. *Town of Longview* v. *City of Crawfordsville* (1905), 164 Ind. 117, 73 N. E. 78; *Sarlls, City Clerk* v. *State ex rel.* (1929), 201 Ind. 88, 166 N. E. 270. We will not further extend the section to cover boards or commissions of the state."

No reason has been advanced by appellant which would persuade us to extend the provisions of such §13 to cover a corporation such as the State Office Building Commission which was created by the Legislature

for the public purpose of providing adequate office space for the various State departments and agencies. See: *Jefferson School Twp.* v. *Jefferson Twp. S. Bldg. Co.* (1937), 212 Ind. 542, 10 N. E. 2d 608.

The State Office Building Commission is not a corporation within the meaning of Art. 11, §13 of the Constitution of Indiana. *Ennis* v. *State Highway Commission, supra* (1952), 231 Ind. 311, 325, 108 N. E. 2d 687, 694; *Book* v. *Indianapolis-Marion Bldg. Auth. et al.* (1955), 234 Ind. 250, 263, 126 N. E. 2d 5, 11; *The People* v. *Green* (1943), 382 Ill. 577, 585, 47 N. E. 2d 465, 470; *Kelley* v. *Earle et al.* (1937), 325 Pa. 337, 352, 190 Atl. 140, 148.

*Second:* Appellant asserts that the proposed agreements of the departments and agencies of the State to pay specified sums for the use and occupancy of the proposed building are, in reality, contracts to pay the proposed debentures and would constitute a debt of the State of Indiana in violation of Art. 10, §5[10] of the Constitution of Indiana.

In order to answer this question we must first decide whether, as appellant further contends, such proposed debentures, if issued as provided in the Act and the resolution of the Commission, would constitute a debt of the State of Indiana in violation of Art. 10, §5 of the Constitution of Indiana.

Section 14 of the Act, as amended (Acts 1957, ch. 304, §6, being §60-2114, Burns' 1951 Replacement (Cum. Supp.)) provides, in part here pertinent, as follows:

> "The debentures issued under the provisions of this act shall constitute only the corporate ob-

---

10. The part of said section here relevant provides that: "No law shall authorize any debt to be contracted on behalf of the State."

ligations of said commission payable solely and only from and secured exclusively by pledge of the income and revenue of the state office building remaining after payment or provisions for payment of the expenses of operation, maintenance and repair of said building to the extent such expenses of operation, maintenance and repair are not otherwise provided, and it shall be plainly stated on the face of each such debenture that same does not constitute an indebtedness of the state of Indiana within the meaning or application of any constitutional provision or limitation but that it is payable solely and only as to both principal and interest from the net revenues of said state office building."

In construing a provision of the Toll Road Act (Acts 1951, ch. 281, §2, p. 848, being §36-3202, Burns' 1949 Replacement (Cum. Supp.)), as follows:

"Toll road revenue bonds issued under the provisions of this act [§§36-3201—36-3222] shall not be deemed to constitute a debt of the state or of any political subdivision thereof or a pledge of the faith and credit of the state or of any such political subdivision, but such bonds shall be payable solely from the funds pledged for their payment as authorized herein, . . . . . All such revenue bonds shall contain on the face thereof a statement to the effect that the bonds, as to both principal and interest, are not an obligation of the State of Indiana, or of any political subdivision thereof, but are payable solely from revenues pledged for their payment.";

this court in *Ennis* v. *State Highway Commission, supra* (1952), 231 Ind. 311, at page 336, 108 N. E. 2d 687, at page 699, said:

"From the above sections, it is clear that this act does not create a debt of the state; *Application of Oklahoma Turnpike Authority* (1950), 203 Okla. 335, 221 P. 2d 795, *supra; State ex rel.* v. *Ferguson* (1951), 155 Ohio St. 26, 97 N. E. 2d 660, *supra; State* v. *Fla. State Improvement Commission*

(1947), 159 Fla. 338, 31 So. 2d 548; nor can tax monies of the state be used to pay the revenue bonds."

Likewise we held in *Indiana State Toll-Bridge Commission* v. *Minor, supra* (1957), 236 Ind. 193, 139 N. E. 2d 445, 447, that revenue bonds issued by the Toll-Bridge Commission under Acts 1939, ch. 79, §10, p. 461, being §36-3010, Burns' 1949 Replacement, were not obligations of the State.

The law is well settled in Indiana that, "Bonds which are to be paid solely from the revenue collected from a project" do not "create a debt of the municipal corporation involved, under Section 1, Article 13, of the Constitution of Indiana." *Ennis* v. *State Highway Commission, supra,* at page 336 of 231 Ind., page 699 of 108 N. E. 2d, and cases there cited.

The provision pertaining to the creation of a debt in Art. 10, §5, *supra,* is of no greater weight than the provision in Art. 13, §1 pertaining to the creation of a debt by political or municipal corporations; hence the rule as followed in this State with reference to the creation of a debt through the issuance of revenue bonds by municipal corporations applies with equal force to the State of Indiana. *Ennis* v. *State Highway Commission, supra* (1952), 231 Ind. 311, 337, 108 N. E. 2d 687, 699; *Loomis* v. *Keehn* (1948), 400 Ill. 337, 341, 80 N. E. 2d 368, 371; *McArthur* v. *Smallwood* (1955), 225 Ark. 328, 337, 281 S. W. 2d 428, 434; *Kelley* v. *Earle et al., supra* (1937), 325 Pa. 337, 347, 190 Atl. 140, 145; *State* v. *Caldwell* (1945), 156 Fla. 618, 621, 23 So. 2d 855, 857; *Sheffield* v. *State School Authority* (1952), 208 Ga. 575, 68 S. E. 2d 590; *State ex rel. Thomson* v. *Giessel* (1955), 271 Wis. 15, 41, 72 N. W. 2d 577, 590.

Since the Commission is a corporate body separate from the State of Indiana in its corporate sovereign capacity, the purchasers of the proposed debentures must rely upon the revenues derived from income from rentals of the building for the payment of interest and the retirement of the bonds as they become due.

The Commission is a creature of the statute under whose provisions it was established, and has only such powers and liabilities as are specifically granted and imposed, plus such other powers as are incidental and necessary to carry out those which are expressly granted.

Purchasers of debentures or bonds issued by the Commission take them subject to all of the provisions of the statute. Under its provisions bondholders, in case of default, have no recourse against the State of Indiana in its corporate sovereign capacity, or against any State fund. Since the statute (§60-2114, *supra*) provides that payments of principal and interest of any debentures issued shall be "payable solely and only from and secured exclusively by pledge of income and revenue of the State Office Building . . . ," the real estate (the State Office Building and grounds) is not subject to attachment for the payment of principal and interest of such bonds or debentures. The pledge is of income and not of real property.

For the reasons above stated the proposed debentures will not constitute a debt of the State of Indiana within the meaning of Art. 10, §5 of the Constitution of Indiana.

We now advert to the question pertaining to the agreements for use and occupancy.

Acts 1957, ch. 304, §7, p. 827, being §60-2115, Burns' 1951 Replacement (Cum. Supp.) provides, in part here pertinent, as follows:

"It is hereby represented that the state of Indiana will have a continuing need for use and occupancy of the facilities to be afforded by said building, and the commission may allocate such facilities to the various state departments and agencies in such manner as the commission determines will best serve in the administration of the state government and maintain such full and complete use and occupancy. The commission and the various state departments and agencies proposing to use and occupy the building shall enter into appropriate agreements setting forth the terms and conditions of such use and occupancy and the sums agreed to be paid at stated intervals for such use and occupancy. Any state department or agency using and occupying any part of said building shall not be obligated to continue such use and occupancy and make payments therefor pursuant to any such agreement but shall be entitled and required to vacate the building if it is shown that the terms and conditions of such use and occupancy and the amount to be paid therefor is unjust and unreasonable considering the value of the services and facilities thereby afforded: Provided, That in determining just and reasonable amounts to be paid for the use and occupancy of the building the commission shall be required to impose and collect amounts which in the aggregate will be sufficient to pay the expenses of operation, maintenance and repair of said building to the extent that such expenses are not otherwise provided and leave a balance of net income and revenues from the building to pay the interest on the debentures as the same become due and accomplish retirement thereof at or before maturity."

The law in this State is well settled that, "a municipal corporation may lawfully contract for necessary services over a period of years and agree to pay therefor in periodic installments as the services are furnished. In such cases the aggregate of the amounts to be paid as the services are rendered under such contracts are not considered as an indebted-

ness of such corporation, and such contracts are not rendered invalid by the fact that the aggregate of the installments exceeds the debt limitation." *Protsman* v. *Jefferson-Craig Consol. School Corp.* (1953), 231 Ind. 527, 532, 109 N. E. 2d 889, 890. See also: *Becker et al.* v. *Albion Jefferson School Corp. et al.* (1956), 235 Ind. 204, 209, 132 N. E. 2d 269, 271; *Kees et al.* v. *Smith, Trustee, etc. et al.* (1956), 235 Ind. 687, 690, 137 N. E. 2d 541, 542. This rule applies with equal force to the State in its sovereign capacity.

The theory of a plan, whereby a State or a political subdivision thereof may acquire public buildings or utilities without pledging their credit therefor beyond the constitutional or statutory limit, is clearly stated in 71 A. L. R., Annotation, pp. 1318, 1319, as follows:

"The underlying theory of this plan is that the only 'indebtedness' or 'liability' assumed by the municipality or other public body is its agreement to pay rent, and that it is assured of the opportunity of acquiring ownership of the property if and when its financial condition will permit, and in the meantime to have the use of the property. Having in view the principle that 'an indebtedness cannot arise unless there is a legal, equitable, or moral obligation to pay a sum of money to another who occupies the position of creditor and who has a legal or moral right to call upon or constrain the debtor to pay' (19 R.C.L. 979), this plan is based upon two rules of law, the first of which is thus stated in 19 R.C.L. 983, 984: 'Where, however, a municipal corporation obligates itself to pay a certain sum annually for a certain period for goods to be delivered or services to be rendered annually during the whole of such a period, since the obligation to pay does not arise until or unless the goods are delivered or the services are rendered, the total amount which it has obligated itself to pay is not to be considered as a part of its indebtedness. . . .'

"The second principle of law relied on in support of the plans under consideration is that an

option to purchase property, or to renew a lease thereon, does not create an indebtedness or liability for the proposed purchase price or rentals, until and unless the municipality elects to exercise such option."

Another question which we must also determine is whether the agreements entered into between the State departments and agencies and the Commission are in fact leases and not contracts of purchase.

The title to all real estate acquired by the Commission must be taken "in the name of the State of Indiana." Section 60-2110, *supra*.

In *Jefferson School Twp.* v. *Jefferson Twp. S. Bldg. Co., supra* (1937), 212 Ind. 542, 551, 10 N. E. 2d 608, 611, this court held that the fact that a school building corporation was willing to give the school building to the school corporation (lessee) when the building company had been paid an amount equal to its investment and a reasonable return thereon, does not change the lease into a contract of purchase. See also: *Protsman* v. *Jefferson-Craig Consol. School Corp., supra* (1953), 231 Ind. 527, 536, 109 N. E. 2d 889, 892.

We also held in the Ennis Case that the fact that the title to the toll road was taken in the name of the State and would become a part of the State free highway system when all the bonds were retired, did not make the toll road bonds an obligation of the State.

We see no reason why the rule in these cases should not apply to the facts in the case at bar.

It is true here, as in the Jefferson School Township and Protsman Cases, that the State, through the device of a lease providing for quarterly rental payments, may become the owner of a State Office Building which it could not acquire in 1958 by issuing bonds to pay the entire cost thereof.

Following further the reasoning in the Jefferson School Township and Protsman Cases, it does not follow that either the arrangement whereby the State departments and agencies will lease office space from the Commission, instead of from private individuals and corporations as they now do, and for some years past have been doing, or the result thereof, constitutes an evasion of the limitations of Art. 10, §5, of the Constitution of Indiana.

The proposed rental agreement to be entered into by the Commission with the various State departments and agencies provides, *inter alia*, that:

(1)  The occupant agrees to use and occupy ———— space and to pay in advance to the Commission quarterly "for the use and occupancy of said ———— space the sum of $———— per month while this agreement is in effect";

(2)  That "This agreement may be terminated by the Occupant at any time upon giving the Commission three (3) months' written notice of the intention of the Occupant to vacate the premises whenever it is determined by the Occupant that the terms and conditions of this agreement for such continued use and occupancy and the amount to be paid therefor are unjust and unreasonable considering the value of the services and facilities thereby afforded";

(3)  That the occupant is obligated to pay for the use and occupancy of the space allotted to it for an indeterminate period for services and facilities as received "and that such obligation ceases upon the termination of this agreement as herein provided"; and

(4)  The Commission is also given the right

"at any time upon three (3) months' written notice" to the Occupant to terminate the rental agreement.

As has already been noted above, the statute (§60-2115, *supra*) provides that any department or agency using or occupying any part of such building, shall not be obligated to continue such use and occupancy and make payments therefor pursuant to any agreement, but "shall be entitled and required to vacate the building if it is shown that the terms and conditions of such use and occupancy and the amount to be paid therefor is unjust and unreasonable considering the value of the services and the facilities thereby afforded." The statute then establishes a basis for determining what is a fair and reasonable rental, and there is nothing in the record here which would indicate that the rental fixed in accordance with the method prescribed in the statute would be unreasonable. The basis for determining the amount of rental has not been shown to be improper. *Ennis* v. *State Highway Commission, supra* (1952), 231 Ind. 311, 323, 108 N. E. 2d 687, 693; *Jefferson School Twp.* v. *Jefferson Twp. S. Bldg. Co., supra* (1937), 212 Ind. 542, 550, 10 N. E. 2d 608, 611.

There is nothing to be found in the entire Act which could be construed as requiring any of the State departments or agencies to continue to rent and occupy any space in the proposed building if, in their opinion, conditions arose which caused the amount being paid for such use and occupancy to be "unjust and unreasonable considering the value of the services and facilities thereby afforded."

The only language which might be considered as a covenant by the State that it will fully and continu-

ously occupy the proposed building is to be found in §60-2115, *supra,* and is repeated here for emphasis, as follows:

> "It is hereby represented that the State of Indiana will have a continuing need for use and occupancy of the facilities to be afforded by said building, . . . ."

In our opinion this language neither requires the State departments and agencies to rent any space in the proposed building nor binds any future session of the Legislature to appropriate the funds with which to pay the rental due by reason of any use and occupancy agreement which may be consummated by any of the State departments and agencies and the Commission.

The lease agreement hereinabove mentioned would not create an obligation of the State to any greater extent than would a lease with private individuals or corporations, such as is now in effect for office space that is being leased by State departments and agencies outside the State House.

Rentals can be paid only by appropriations made every two years by the Legislature. *McArthur* v. *Smallwood, supra* (1955), 225 Ark. 328, 333, 281 S. W. 2d 428, 431.

The fact that the revenue which ultimately pays the principal and interest of the debentures comes from taxes, *via* the general fund of the State, does not invalidate the proceedings or make the agreements for use and occupancy a contract of purchase as contended by appellant. *Protsman* v. *Jefferson-Craig Consol. School Corp, supra* (1953), 231 Ind. 527, 540, 109 N. E. 2d 889, 894; *Loomis* v. *Keehn, supra* (1948), 400 Ill. 337, 341, 80 N. E. 2d 368, 371; *State ex rel. Thomson* v.

*Giessel, supra* (1955), 271 Wis. 15, 43, 44, 72 N. W. 2d 577, 591, 592.

We recognize that according to the majority rule the fact that "the so-called rentals are sufficient, if paid throughout the term of the lease, to cover the entire purchase price, and to enable the municipality to acquire the property without further payment, renders the contract one of purchase rather than lease, and gives rise to an indebtedness, within the meaning of a constitutional or statutory debt limitation." 71 A. L. R. Anno., p. 1326.

However, the majority rule as above stated is not applicable in the case at bar for two reasons:

(1) Because the statutory provision in §60-2115, *supra,* fixes an indefinite term and gives the right to cancel the lease agreement at any time, the rentals in the agreement here under consideration cannot be considered as sufficient to cover the entire purchase price of the building; and

(2) The course which we are obligated to follow in the determination of the question under consideration has already been charted, in a direction contrary to the majority rule, by former decisions of this court. *Protsman* v. *Jefferson-Craig Consol. School Corp., supra* (1953), 231 Ind. 527, 536, 109 N. E. 2d 889, 892; *City of South Bend* v. *Reynolds* (1900), 155 Ind. 70, 57 N. E. 706, 49 L. R. A. 795; and no good reason has here been advanced why we should change the rule which has already been followed in other cases involving similar questions.

Under the circumstances as outlined above it is our opinion that the proposed agreement for use and occupancy of the State Office Building is, in truth and in fact, a lease and not a contract of purchase.

The debt provisions of Art. 10, §5, of the Constitution of Indiana apply only to legally enforceable obligations. *Kees et al.* v. *Smith, Trustee, etc. et al., supra* (1956), 235 Ind. 687, 137 N. E. 2d 541; *Protsman* v. *Jefferson-Craig Consol. School Corp., supra* (1953), 231 Ind. 527, 109 N. E. 2d 889.

The payments for use and occupancy pursuant to §60-2115, *supra,* are bona fide rental charges and they are not legally enforceable until and unless the occupant has a right to and does enjoy the use of the space allotted to it. For the reasons above stated the proposed use and occupancy agreements cannot be considered a debt under the provisions of Art. 10, §5, *supra.*

Appellant's contention that the Commission is a "dummy corporation" or a subterfuge and that the State in its sovereign capacity is the real party in interest, is, we believe, answered to the contrary by this court, speaking through Judge Draper, in *Protsman* v. *Jefferson-Craig Consol. School Corp., supra* (1953), 231 Ind. 527, at pages 538, 539, 540, 109 N. E. 2d 889, 893, 894, as follows:

"We are reminded that the building corporation is limited in its purposes to acquiring a site, erecting a suitable school building, leasing it to the school corporation and collecting the rentals and applying them as provided by statute; that the school corporation pays any taxes or assessments levied against the property, pays for insurance, and is responsible for maintenance, repairs, alterations and improvements; that the building corporation cannot make a profit; but in effect it merely collects money from the lessee with one hand and pays it to the security holders with the other. From these facts it is argued that the building corporation is merely a 'dummy' corporation, and we are asked to look to the substance of the

transaction and find that we are dealing with nothing more than an arrangement for the purchase of a school building on the installment plan.

"Actually we are required only to examine the transaction for the purpose of determining whether the school corporation becomes indebted by the lease-contract in excess of constitutional authority, but should it appear that such is in reality the case, it would be our duty to so find, regardless of any subterfuge or attempt at concealment no matter how plausible. But the particular question before us is not an open one in Indiana. On the authority of the Jefferson Township case we feel constrained to hold otherwise. It was said in that case that the fact the school corporation could, by paying a reasonable rental over a period of years, become the owner of the building, did not change the lease-contract into a contract to purchase a building, nor create a present indebtedness where none actually existed. We may add that, in our opinion, the limitation of the activities in which the parties may be required or permitted to engage during the life of the lease are equally impotent to effect such a change.

"If the school corporation is unable to build a school house it must lease one. If, as it appears here without contradiction, the school corporation can lease a new building at a fair and reasonable rental, this court would not be warranted in striking the arrangement down merely because the school corporation can, at its option, but without compulsion so to do, acquire ownership of the property on favorable terms."

Appellant further asserts in this connection that the State Office Building Act, the resolution of the Commission passed pursuant thereto, and the use and occupancy agreements, are "an attempt to avoid the constitutional debt limitation and cannot be countenanced." It is never an illegal evasion of a constitutional provision or prohibition to accomplish a desired result, which is lawful in itself, by discovering or following a legal way to do it. *Kelley* v.

*Earle, supra* (1937), 325 Pa. 337, 351, 190 Atl. 140, 147; *State ex rel. Thomson* v. *Giessel, supra* (1955), 271 Wis. 15, 42, 72 N. W. 2d 577, 591.

If the Legislature has discovered a lawful method of avoiding the debt limitation of the Constitution of Indiana whereby it can obtain for the State, after a period of years, a State Office Building, instead of a stack of rent receipts,[11] that is a matter of policy for its determination. This court will not question the wisdom of a statute or the motive which led to its enactment. *State* v. *Clements* (1939), 215 Ind. 666, 669, 22 N. E. 2d 819.

Indulging the presumption of constitutionality as we must, it is our opinion that the State Office Building Act does not violate any of the provisions of Art. 10, §5 of the Constitution of Indiana.

Appellant relies on *State Office Bldg. Commission* v. *Trujillo* (1942), 46 N. M. 29, 120 P. 2d 434, and *McCutcheon* v. *State Building Authority* (1953), 13 N. J. 46, 97 A. 2d 663, to support his position that the proposed debentures and lease agreements create a debt of the State of Indiana. However, he has failed to show wherein such cases are authority for his contention here.

We do not deem it necessary to discuss these cases at length, but an examination of them shows clearly that they are not controlling precedents in the matter here before us because of the difference in constitutional provisions which have caused the courts of those States to adopt a theory of law different from that

11. According to the records in the office of the State Budget Committee the State is now paying to private individuals and corporations for office space in the City of Indianapolis approximately $471,940 per year.

which has been followed by this court in questions pertaining to the issuance of revenue bonds.

*Third:* Does the State Office Building Act violate Art. 2, §9 of the Constitution of Indiana because it would permit members of the Commission to hold more than one lucrative office at the same time?

Section 2 of ch. 304 of the Acts of 1957, p. 827, being §60-2103, Burns' 1951 Replacement (Cum. Supp.) provides, *inter alia,* that "The officials constituting the commission shall be allowed and paid their actual expenses incurred in connection with the affairs of the commission but shall receive no further or additional compensation."

"Lucrative office" as the term is used in Art. 2, §9, of the Constitution of Indiana has been considered and defined by this court since the year 1846 as an office to which there is attached a compensation for services rendered. The definition which is still followed in Indiana (Op. Atty. Gen., 1953, p. 353) is stated in *The State ex rel. Platt* v. *Kirk* (1873), 44 Ind. 401, at pages 405-406, 15 Am. Rep. 239, as follows:

"An office to which there is attached a compensation for services rendered is a lucrative office. Webster defines the word lucrative to mean 'yielding lucre; gainful; profitable; making increase of money or goods; as a lucrative trade; lucrative business or office.' In *Dailey* v. *The State,* 8 Blackf. 329, Perkins, J., in speaking of the offices of recorder and county commissioner, said: 'We think, also, they are lucrative offices. Pay, supposed to be an adequate compensation, is affixed to the performance of their duties. We know of no other test for determining a "lucrative office" within the meaning of the constitution. The lucrativeness of an office—its net profits—does not depend upon the amount of compensation affixed to it. The expenses incident to an office with a high salary may render it less lucrative, in

this latter sense, than other offices having a much lower rate of compensation.' "

While members of the State Office Building Commission are charged with certain duties under the Act creating the Commission, they receive no compensation for their services, and under the above definition adopted by this court membership on the Commission does not constitute a lucrative office. *The State ex rel. Platt* v. *Kirk, supra; Chambers* v. *The State ex rel. Barnard, Prosecuting Attorney* (1891), 127 Ind. 365, 367, 26 N. E. 893, 11 L. R. A. 613; *Wells* v. *State ex rel.* (1911), 175 Ind. 380, 94 N. E. 321; *Crawford* v. *Dunbar* (1877), 52 Cal. 36, 39; *State ex rel.* v. *Slagle* (1905), 115 Tenn. 336, 340, 89 S. W. 326, 327.

*Fourth:* Does the Act, by making the Governor and Lieutenant Governor members of the Commission, violate Art. 5, §24, of the Constitution of Indiana which makes the Governor and Lieutenant Governor ineligible to any other office during the term for which they shall have been elected?

A public officer has been defined in *State ex rel. Wash. Twp.* v. *Aetna Cas., etc.* (1935), 100 Ind. App. 46, at page 52, 189 N. E. 536, 538, 539, quoting from *Shelmadine* v. *City of Elkhart* (1921), 75 Ind. App. 493, 495, 129 N. E. 878, as follows:

" 'A public officer may be defined as a position to which a portion of the sovereignty of the state attaches for the time being, and which is exercised for the benefit of the public. The most important characteristic which may be said to distinguish an office from an employment is, that the duties of the incumbent of an office must involve an exercise of some portion of the sovereign power.' "

A public office has been defined by this court in re-

lation to Art. 2, §9, of the Constitution of Indiana, in *Wells* v. *State ex rel., supra* (1911), 175 Ind. 380, 384, 94 N. E. 321, 322, as follows:

> "An office is a public charge or employment, in which the duties are continuing, and prescribed by law and not by contract, invested with some of the functions pertinent to sovereignty, or having some of the powers and duties which inhere within the legislative, judicial or executive departments of the government, and emolument is a usual, but not a necessary element thereof." Citing authorities. See also: *Wetzel* v. *McNutt* (1933), 4 F. Supp. 233, 234.

As above stated, the State Office Building Commission is a separate corporate body created as an instrumentality of the State for a public purpose.

In our opinion the word "office" as used in Art. 5, §24, of the Constitution of Indiana means a public position or employment, the duties of which are prescribed by law, and the appointment or election to which is for a given period during which an individual is vested with some part of the sovereign functions of State Government to be exercised by him for the benefit of the public, where emolument is a usual, but not an essential element thereof. *State ex rel. Black* v. *Burch* (1948), 226 Ind. 445, 456, 80 N. E. 2d 294, 299; *Wells* v. *State ex rel., supra* (1911), 175 Ind. 380, 384, 94 N. E. 321, 322.

The State Office Building Act simply imposes additional duties, within the executive department of the State Government, upon the Governor and Lieutenant Governor, which the Legislature may do. *State* v. *Caldwell, supra* (1945), 156 Fla. 618, 620, 23 So. 2d 855, 856; and an office is not necessarily created by a statute that imposes additional duties and powers upon an officer. *Ashmore* v. *Greater*

*Greenville Sewer District* (1947), 211 S. C. 77, 92, 44 S. E. 2d 88, 95, 173 A. L. R. 397, 407. .

The right to discharge the duties as members of the Commission is not conferred upon the Governor and Lieutenant Governor as individuals, but as a part of the duties which they are required to perform in the offices that they each now hold.

Both the Governor[12] and Lieutenant Governor[13] serve as members of many State Boards and Commissions, and we find nothing in the State Constitution

12. The Governor is a member of the following: Armory Board, Acts 1953, ch. 187, §208, p. 660; Board for Depositories, Act 1937, ch. 3, §22, p. 8; State Election Board, Acts 1945, ch. 208, §9, p. 680; Indiana State Fair Board, Acts 1947, ch. 214, §2, p. 769; State Board of Finance, Acts 1941, ch. 27, §1, p. 64; Mental Institutions Planning Commission, Acts 1957, ch. 125, §1, p. 222; Commission on Interstate Cooperation, Acts 1937, ch. 12, §1, p. 46; Acts 1937, ch. 74, §1, p. 402; State Office Building Commission, Acts 1957, ch. 304, §2, p. 827; Commission on Public Records, Acts 1935, ch. 219, §1, p. 1035; Reciprocity Commission, Acts 1945, ch. 178, §1, p. 442; Department of State Revenue (Indiana Revenue Board), Acts 1947, ch. 10, §3, p. 49; Indiana State School Building Authority, Acts 1951, ch. 309, §5, p. 1029; Indiana Common School Fund Building Commission, Acts 1953, ch. 141, §2, p. 459; Indiana Sesquicentennial Commission, Acts 1957, ch. 374, §1, p. 1095; Commission on State Tax and Financing Policy, Acts 1953, ch. 241, §3, p. 884; Governor's Traffic Safety Committee, Acts 1953, ch. 218, §7, p. 794.

13. The Lieutenant Governor is a member of the following: Commissioner of Agriculture, Acts 1947, ch. 214, §2; Indiana State Fair Board, Acts 1947, ch. 214, §2; Mental Institutions Planning Commission, Acts 1957, ch. 125; Director of the Department of Commerce, Agriculture, Industry and Public Relations, Acts 1945, ch. 166, §2; County Agriculture Extension Service Board, Acts 1949, ch. 142, §1; Commission on Interstate Cooperation, Acts 1937, ch. 74, §1; Fair Employment Practices Advisory Board, Acts 1945, ch. 325, §6; Chairman of the Indiana Legislative Advisory Commission, Acts 1945, ch. 88, §2; Administrative Officer of the Live Stock Buyers License Division, Acts 1957, ch. 288, §1; State Office Building Commission, Acts 1957, ch. 304, §1; Indiana Common School Fund Building Commission, Acts 1953, ch. 141, §2; State School Bus Committee, Acts 1955, ch. 306, §1; Indiana Sesquicentennial Commission, Acts 1957, ch. 374, §1; Chairman of the Soil Conservation Committee, Acts 1945, ch. 331, §2; Stream Pollution Control Board, Acts 1957, ch. 64, §1; Advisory Board of the "Indiana Seal of Quality," Acts 1957, ch. 295, §4; Administrative Officer of the Indiana Economic Council, Acts 1957, ch. 17.

which would prevent the Legislature from making them members of the State Office Building Commission.

*Fifth:* Is the State Office Building Act an improper delegation of legislative authority in violation of the provisions of Art. 4, §1, because it empowers the Commission to select the site for the proposed building, issue revenue bonds, and perform other functions of like character which we deem it unnecessary to mention?

Similar questions to those raised by appellant on this point are fully considered in *Ennis* v. *State Highway Commission, supra* (1952), 231 Ind. 311, at pages 326 to 329, inclusive, 108 N. E. 2d 687, 694-696, and the reasoning in that case applies with equal force to the objections raised here.

This court recently reaffirmed the rule that reasonable standards must be imposed where the Legislature delegates discretionary powers to an administrative officer or body. *Matthews* v. *State* (1958), 237 Ind. 696, 148 N. E. 2d 334; *State ex rel. Standard Oil Co.* v. *Review Bd.* (1951), 230 Ind. 1, 8, 101 N. E. 2d 60.

We believe the standards here are reasonable and there is no violation of Art. 4, §1, of the Constitution of Indiana.

*Sixth:* Do Sections 19[14] and 21[15] of the Act violate Art. 4, §19, of the Constitution of Indiana because their subject is not expressed in the title?

Section 19, *supra*, provides that the Director of Public Works and Supply shall become the custodian of

14. Acts 1953, ch. 221, §19, p. 803, being §60-2119, Burns' 1951 Replacement (Cum. Supp.).
15. Acts 1953, ch. 221, §21, p. 803, being §60-2121, Burns' 1951 Replacement (Cum. Supp.).

the office building. Section 21, *supra,* provides that the Commission shall fix the salary of all employees and agents of the Commission.

The title of the Amendatory Act of 1957 provides, *inter alia,* "An Act creating a State Office Building Commission; . . . providing for the leasing of such office building to the departments of the state government; . . . ."

In *Ennis* v. *State Highway Commission, supra* (1952), 231 Ind. 311, at page 318, 108 N. E. 2d 687, 691, quoting from *Board* v. *Scanlan* (1912), 178 Ind. 142, at page 145, 98 N. E. 801, this court said:

> " 'It is sufficient that the title shall "embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title." (Const. Art. 4, §19), and that it is of such character as fairly to apprise the legislators and the public in general of the subject-matter of the legislation, so as to lead to inquiry into the body of the bill, or indicate some particular branch of legislation as a head under which the particular provisions of the act may reasonably be looked for, and it need not set out all the matters properly connected with, or germane to the subject-matter of the act.' " See also: *Board of Comm. Adams County* v. *Fennig* (1937), 211 Ind. 411, 415, 5 N. E. 2d 639.

The title of the Act here is sufficient to meet the requirements of the above rule and there is no violation of Art. 4, §19, *supra.*

*Seventh:* Is the State Office Building Act a special one in violation of Art. 4, §23, of the Constitution of Indiana? This section provides, in part, as follows:

> " . . . and in all other cases *where a general law can be made applicable,* all laws shall be general and of uniform operation throughout the State." (Our italics.)

The State Office Building Act has one, and only one, purpose—to provide a suitable and adequate office building for the various State departments and agencies—and its provisions uniformly affect the entire State.

It is clearly apparent here that the usual general law could not be made applicable, because only one corporation is necessary to accomplish the full purpose of the Act. *Bullock* v. *Billheimer* (1911), 175 Ind. 428, 437, 94 N. E. 763.

The Act here in question is clearly within the implied exception in Art. 4, §23, *supra,* and does not violate any of the provisions thereof.

*Eighth:* It is asserted that the Act does not provide for any appropriation to enable the various departments and agencies of the State to pay for the use and occupancy of the building.

It is anticipated that the Legislature will make proper appropriations to pay for the use and occupancy of the proposed building as such services are required, and it is not contended by appellees that future rental payments can be made by the occupants of the building without proper appropriations therefor by succeeding Legislatures. Hence, appellant's assertion that the Act violates Art. 10, §3, of the Constitution of Indiana is without merit.

*Ninth:* Does the expenditure by the Commission of the funds received from payments pursuant to the proposed use and occupancy agreements, require an appropriation as provided in Art. 10, §3, *supra*?

Such funds are not money in the State treasury within the meaning of Art. 10, §3, *supra,* but are funds of the State Office Building Commission to be dispensed

and expended by it in the manner and for the purposes provided in the Act. Hence, such funds are not subject to the provisions of Art. 10, §3, *supra*.

*Tenth:* While it is true, as appellant asserts, that the Commission cannot, by resolution, impose additional duties upon the Treasurer of State, we find nothing in the State Constitution which would prohibit him from serving as Treasurer of the Commission so long as it is not a lucrative office.

The Treasurer of State now serves as Treasurer and Custodian of other funds which are not subject to appropriation by the Legislature.[16]

The State Office Building Act makes no specific provision for the appointment of a Treasurer of the Commission, nor does it designate the Treasurer of State as such. However, Acts 1953, ch. 221, §4, p. 803, being §60-2104, Burns' 1951 Replacement (Cum. Supp.) provides, *inter alia*, that, "The commission shall be empowered to employ all other necessary assistants to carry out all other necessary provisions of this act." Since a Treasurer and Custodian of the funds of the Commission is necessary to carry out the provisions of the Act, this section is sufficient to authorize and empower the Commission to appoint the Treasurer of State, with his consent, or any other person, as Treasurer of the Commission with such duties as are necessary to carry out the relevant provisions of the Act.

*Eleventh:* Is the State Office Building Act in violation of Art. 3, §1, of the Constitution of Indiana because it permits persons charged with official duties

---

16. As for example, the Treasurer of State is Custodian of the Indiana State Teachers' Retirement Fund, and of the Indiana Judges' Retirement Fund, neither of which Fund is subject to appropriation by the Legislature.

under one department of State Government to exercise functions of another?

Section 60-2102, *supra,* provides, in part here material, as follows:

"The commission shall consist of the governor, the lieutenant governor and the members of the state budget committee, . . . ., and one [1] member of the senate, to be appointed by the lieutenant governor. . . . and one [1] member of the house of representatives, to be appointed by the speaker."

It will be noted that members of the State Budget Committee and other members of the Legislature are, as is the case with the Governor and Lieutenant Governor, made members of the Commission because of the office which they already hold. Members of the State Budget Committee, with the exception of the Budget Director, are members of the General Assembly. Acts 1953, ch. 261, §1, p. 936, being §60-412, Burns' 1951 Replacement (Cum. Supp.).

Article 3, §1, of the Constitution of Indiana is the keystone of our form of government and to maintain the division of powers as provided therein, its provisions will be strictly construed. *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 101, 26 N. E. 2d 399.

This section (§1, Art. 3, *supra*) provides:

"The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial; and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

There is no exception provided in the Constitution which is applicable here. This principle is safeguarded

in our Federal Constitution and in the Constitution of every State of the Union.

In *O'Donoghue* v. *United States* (1933), 289 U. S. 516, at page 530, 77 L. Ed. 1356, 1360, 53 S. Ct. 740, the United States Supreme Court, speaking through Mr. Justice Sutherland, said:

> "The Constitution, in distributing the powers of government, creates three distinct and separate departments—the legislative, the executive, and the judicial. This separation is not merely a matter of convenience or of governmental mechanism. Its object is basic and vital, . . . namely, to preclude a commingling of these essentially different powers of government in the same hands. . . .
>
> "If it be important thus to separate the several departments of government and restrict them to the exercise of their appointed powers, it follows, as a logical corollary, equally important, that each department should be kept completely independent of the others—independent not in the sense that they shall not cooperate to the common end of carrying into effect the purposes of the Constitution, *but in the sense that the acts of each shall never be controlled by, or subjected, directly or indirectly, to, the coercive influence of either of the other departments.* James Wilson, one of the framers of the Constitution and a justice of this court, in one of his law lectures said that the independence of each department required that its proceedings *'should be free from the remotest influence, direct or indirect, of either of the other two powers.'* 1 Andrews, Works of James Wilson (1896), p. 367. And the importance of such independence was similarly recognized by Mr. Justice Story when he said that in reference to each other, neither of the departments *'ought to possess, directly or indirectly, an overruling influence in the administration of their respective powers.'* " (Our italics.)

THOMAS JEFFERSON, in discussing the weaknesses of the Constitution of the State of Virginia as it existed in 1781, said:

"An *elective despotism* was not the government we fought for, but one which should not only be founded on free principles, but in which the powers of government should be so divided and balanced among several bodies of magistracy, as that no one could transcend their legal limits, without being effectually checked and restrained by the others. For this reason that convention which passed the ordinance of government, laid its foundation on this basis, that the legislative, executive, and judiciary departments should be separate and distinct, so that no person should exercise the powers of more than one of them at the same time." Jefferson, "Notes on the State of Virginia," 1781-1785, ch. 13, as reprinted in "The Complete Jefferson," by Padover, ch. XIV, pp. 648, 649.[17]

JAMES MADISON, speaking in No. 48 of The Federalist, said:

"It is agreed on all sides, that the powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments. It is equally evident, that none of them ought to possess, directly or indirectly, an overruling influence over the others, in the administration of their respective powers. It will not be denied, that power is of an encroaching nature, and that it ought to be effectually restrained from passing the limits assigned to it."

GEORGE WASHINGTON feared the destruction of our form of government by an abuse of the principle

17.   As an appendix to his "Notes on Virginia" Jefferson published a proposed "Draft of a Constitution for Virginia" in which he included the following clause:

"The powers of government shall be divided into three distinct departments, each of them to be confined to a separate body of magistracy; to wit, those which are legislative to one, those which are judiciary to another, and those which are executive to another. No person, or collection of persons, being of one of these departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly permitted." See: "The Complete Jefferson," by Padover, p. 111.

of separation of powers, as evidenced by the following reference thereto in his Farewell Address:

"It is important, likewise, that the habit of thinking in a free country should inspire caution, in those intrusted with its administration, to confine themselves within their respective constitutional spheres, avoiding in the exercise of the powers of one department to encroach upon another. The spirit of encroachment tends to consolidate the powers of all the departments in one, and thus to create, whatever the form of government, a real despotism. A just estimate of the love of power, and proneness to abuse it, which predominates in the human heart, is sufficient to satisfy us of the truth of this position. The necessity of reciprocal checks in the exercise of political power, by dividing and distributing it into different depositories, and constituting each the Guardian of the Public Weal against invasions by the others, has been evinced by experiments, ancient and modern; some of them in our country and under our own eyes. To preserve them must be as necessary as to institute them. If, in the opinion of the people, the distribution or modification of the constitutional powers be in any particular wrong, let it be corrected by an amendment in the way which the constitution designates. But let there be no change by usurpation; for, though this, in one instance, may be the instrument of good, it is the customary weapon by which free governments are destroyed."

JAMES BRYCE, in "The American Commonwealth," Vol. 1, ch. 21, p. 216, discussing the Legislature and the Executive, said:

"The fundamental characteristic of the American National Government is its separation of the legislative, executive, and judicial departments. This separation is the merit which the Philadelphia Convention chiefly sought to attain, and which the Americans have been wont to regard as most completely secured by their Constitution."

CHARLES WARREN, an eminent authority on Constitutional Law, in an address to the Kentucky Bar Association in 1928, said:

> "But, as Adams[18] pointed out, any government in which one body (whether King or Legislature) both makes the laws and executes them is essentially an arbitrary government. It is the essence of a free republic, on the other hand, that no man or set of men shall ever have power 'to make the law, to decide whether it has been violated, and to execute judgment on the violator.' To preserve liberty to the people, there must be restraints and balances and separations of power." Case and Comment, Vol. 35, No. 2, p. 3.

Since the Commission is an instrumentality of the State, it necessarily performs some State functions. The members of the Commission are clearly not judicial or legislative officers, hence, they, of necessity, then must fall within the executive department of State Government, and are administrative officers in the sense that they perform functions which usually are and would be performed by administrative officers within the executive department.

Among the duties and functions imposed upon the members of the Commission are:

> To employ an executive director "who shall be the executive head"; and to employ assistants necessary to carry out the provisions of the Act. (§60-2104, *supra*) ;

> To acquire, in the name of the State, a site and to erect thereon a State Office Building, landscape and beautify the grounds, and construct walks,

---

18. John Adams was the first to explain clearly to the people why, if they were to institute a republican form of Government, they must keep the three branches of Government, the Legislative, Executive, and Judicial, separate and independent. Case and Comment, Vol. 35, No. 2, p. 3.

drives, fences and other appurtenances as may be deemed essential. (§60-2105, *supra*);

To procure and adopt a design for the construction of the State Office Building, and to employ an architect for such purpose. (§60-2107, *supra*);

To advertise and receive bids for the erection of the building, and to award contracts for the construction thereof. (§60-2108, *supra*);

To issue and sell revenue debentures to pay the cost of the construction of the building. (§60-2114, *supra*);

To cause to be appraised and sell obsolete State owned property. (§§60-2117 and 60-2118, *supra*);

To fix the salaries of all employees and agents of the Commission (§60-2121, *supra*); and allocate the use and facilities of the building "to the several departments of the state government in such manner as will best serve in the administration of the state government." (§60-2131, *supra*.)

The foregoing, as well as other duties not mentioned, are clearly acts exercised in the enforcement of the State Office Building Act for the benefit of the public, and the duties and functions required to be performed in carrying out the provisions thereof rest within the executive-administrative department of the State Government. *Tucker* v. *State* (1941), 218 Ind. 614, 700, 701, 35 N. E. 2d 270, 303; *Morgan* v. *Tennessee Valley Authority* (1940), 6 Cir., 115 F. 2d 990, 994 (Cert. denied, 312 U. S. 701); *Bramlette* v. *Stringer* (1938), 186 S. C. 134, 149, 195 S. E. 257, 263, 264.

"Legislative power, as distinguished from executive power, is the authority to make laws, but

not to enforce them or appoint the agents charged with the duty of such enforcement. The latter are executive functions." *Springer* v. *Philippine Islands* (1928), 277 U. S. 189, 202, 72 L. Ed. 845, 48 S. Ct. 480. See also: *Tucker* v. *State, supra* (1941), 218 Ind. 614, 35 N. E. 2d 270; 16 C. J. S., Constitutional Law, §130, pp. 545, 547.

Under the foregoing and other provisions of the Act the executive power of appointment, administration, and enforcement thereof, is vested in the Commission, and when performed by the legislative members, is not incidental to their legislative power; instead the primary purpose of the Act requires the exercise of judgment and discretion in executing a law enacted by the Legislature. The Legislature may enact, but it cannot execute laws. That is the duty of the executive department. The Legislature here has attempted to confer executive power upon a Commission, the majority of which is composed of its own members, and to impose upon the legislative members thereof duties which they cannot constitutionally exercise. *Myers* v. *United States* (1926), 272 U. S. 52, 71 L. Ed. 160, 47 S. Ct. 21; *Springer* v. *Philippine Islands, supra* (1928), 277 U. S. 189, 72 L. Ed. 845, 48 S. Ct. 480; *State ex rel. Black* v. *Burch, supra* (1948), 226 Ind. 445, 80 N. E. 2d 294, 81 N. E. 2d 850; *Stockman* v. *Leddy* (1912), 55 Colo. 24, 129 P. 220; *Simpson* v. *Hill* (1927), 128 Okla. 269, 263 P. 635, 56 A. L. R. 706.

This construction of Art. 3, §1, *supra,* does not prohibit the Legislature from engaging in activities which are properly incidental and germane to its legislative powers.

Article 3, §1, *supra,* is not a law against dual office holding. It is not necessary to constitute a violation

of the Article, that a person should hold an office in two departments of Government. It is sufficient if he is an officer in one department and at the same time is performing functions belonging to another. *State ex rel. Black* v. *Burch, supra* (1948), 226 Ind. 445, 462, 80 N. E. 2d 294; *Monaghan* v. *School District No. 1, Clackamas County* (1957), 211 Ore. 360, 315 P. 2d 797, 802-804.

If members of the Legislature may be appointed as members of Boards which exercise functions within the executive-administrative department of Government, the door is then open for the Legislature to enter and assume complete control thereof. In fact, if the present provisions for membership on the Commission are valid, the Legislature, by having six of its members on the Commission, could control its every act, and thus completely usurp the authority of the Governor to "faithfully execute" the laws enacted by the Legislature. Article 5, §16, Constitution of Indiana.

For the reasons above stated no member of the Legislature, including those presently serving as members of the State Budget Committee, is eligible to serve as a member of the Commission.

It follows that that part of §2 of ch. 221 of the Acts of 1953, being §60-2102, Burns' 1951 Replacement (Cum. Supp.) which provides that certain members of the Legislature, including those who are now members of the Budget Committee, shall be members of the Commission, is in violation of the provisions of Art. 3, §1, of the Constitution of Indiana because it attempts to confer executive-administrative duties upon members of the Legislature and is, therefore, void and of no force and effect. *State* v. *Starke Circuit Court* (1958), 238 Ind. 35, 147 N. E. 2d 585, 589; *State ex rel. Black* v. *Burch, supra* (1948),

226 Ind. 445, 80 N. E. 2d 294, 81 N. E. 2d 850; *Tucker* v. *State, supra* (1941), 218 Ind. 614, 640, 663, 35 N. E. 2d 270, 279, 288.

The Act has a separability clause (Acts 1957, ch. 304, §23) which provides that if any of its provisions are invalid, such invalidity shall not affect other provisions of the Act which can be given effect without the invalid provision.

The elimination of these provisions of §2,[19] *supra,* would not broaden the scope of the Act, as was the case in *Fairchild, Prosecuting Atty., etc.* v. *Schanke et al.* (1953), 232 Ind. 480, 493, 113 N. E. 2d 159; hence, it cannot be said that the Legislature would not have passed the Act had it known that members of that body were not qualified to serve as members of the Commission.

This court, considering a similar question, in *The State ex rel. Collett* v. *Gorby* (1890), 122 Ind. 17, at page 29, 23 N. E. 678, at page 682, said:

> "Finally it is contended that if the provision of the statute which reserves to the General Assembly the power to fill the office created thereby falls, the whole act must fall with it, for the reason that we can not presume the General Assembly would have passed the law, had it not believed it possessed the power to elect the incumbent.
>
> "Such an assumption can only be maintained upon the supposition that the General Assembly created the office in question for the sole purpose of providing a place for some particular partisan or individual. We can not attribute to a co-ordinate branch of the government an object so unworthy of it and of its well known duties. We must attribute to that body the belief that the office in question was demanded by the public necessity, and that it was created for that reason, without

19. Acts 1953, ch. 221, §2, p. 803, being §60-2102, Burns' 1951 Replacement (Cum. Supp.).

reference to the constituency which should choose the person by whom it should be administered. Striking from the law the provision reserving to the General Assembly the power to elect the incumbent to the office thereby created, it leaves a perfect law, capable of being executed according to the intention of the Legislature, as therein expressed. Under such circumstances that which is unconstitutional will be rejected, and the remainder will stand as the law. *State ex rel.* v. *Blend* [1890], 121 Ind. 514, and authorities there cited."

This language so clearly and ably covers the question here under consideration that we adopt it as a conclusive answer thereto.

The valid parts of the State Office Building Act make a complete law without the unconstitutional part of §2, of ch. 221, *supra,* capable of execution and administration according to the intention of the Legislature, and that part which is unconstitutional will be discarded and the remainder "will stand as the law."

As this court held in *Tucker* v. *State, supra* (1941), 218 Ind. 614, 704, 35 N. E. 2d 270, 304, the vacancies thus created "by a failure of the provision for appointment within the statute, because of unconstitutionality, may be filled by the Governor under the authority vested in him to fill vacancies in state offices by Section 18 of Article 5 of the Constitution."

Because the statute here under consideration also fails to provide for appointment in the event of unconstitutionality, the Governor may, under the authority of Art. 5, §18, of the Constitution of Indiana, and *Tucker* v. *State, supra,* fill the vacancies caused in the membership of the Commission, because of the ineligibility of members of the Legislature.

A question as to the validity of the acts of the Commission is raised by declaring ineligible members of the Legislature who have been acting as members of the Commission. These individuals are in possession of the office, have been performing its duties, and are claiming to be members of the Commission pursuant to statutory designation and appointment, and under these circumstances they have been and are *de facto* officers. *Felker* v. *Caldwell* (1919), 188 Ind. 364, 371, 123 N. E. 794.

The law seems to be well settled in Indiana that one who is elected or appointed to an office under an unconstitutional statute, before it is adjudged to be so, is an officer *de facto,* and his acts will be held valid in respect to the public, whom he represents, and to third persons with whom he deals officially. *Parker et al.* v. *The State ex rel. Powell* (1892), 133 Ind. 178, 200, 32 N. E. 836, 18 L. R. A. 567; *Felker* v. *Caldwell, supra* (1919), 188 Ind. 364, 371, 123 N. E. 794; *City of Michigan City* v. *Brossman* (1938), 105 Ind. App. 259, 11 N. E. 2d 538.

*Twelfth:* Since we have held that members of the Legislature are not eligible to serve as members of the Commission because that part of the Act violates Art. 3, §1, of the Constitution of Indiana, it is not necessary to decide whether the Act violates Art. 4, §30 as asserted by appellant.

For the reasons above stated, the judgment of the trial court is affirmed in part and reversed in part, with instructions to the trial court to restate its judgment in accordance with this opinion.

Landis, Achor and Arterburn, JJ., concur.

Emmert, C. J., concurs in part with separate opinion.

CONCURRING OPINION

EMMERT, C. J.—I concur in the majority opinion except as to the ineligibility of the members of the General Assembly to be members of the Commission. Once we hold, as I believe we must, that the State Office Building Commission is a corporate entity separate from the State in its sovereign corporate capacity, it logically follows that the Commission is not a Department of the State of Indiana. Therefore, §60-2102, Burns' 1951 Replacement (Supp.), does not violate Art. 3, §1, Art. 4, §1, or Art. 5, §1 of the Constitution providing for the separation of the powers of government. The members of the Commission are not exercising any functions of the Executive Department, for that is a Department of the State in its separate sovereign capacity. The fact that the Commission is an instrumentality of the State does not make it the State any more than the Indiana State Toll-Bridge Commission or the Indiana Toll Road Commission are Departments of the State. Under the issues presented and considered, I believe the Act is legal and constitutional in its entirety.

NOTE.—Reported in 149 N. E. 2d 273.